BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
PAULA M. ROACH (254142)
701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
proach@bholaw.com

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW
ERICH P. SCHORK
1 North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: 312/621-2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA RAFOFSKY and JOSHUA IRON WING, individually and on behalf of all others similarly situated, | Case No. 2:15-cv-01848 |
| | **CLASS ACTION** |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| NISSAN NORTH AMERICA, INC., a California corporation, | |
| Defendant. | JURY TRIAL DEMANDED |

*Blood Hurst & O'Reardon, LLP* (vertical left margin text)

CLASS ACTION COMPLAINT

00082186

BLOOD HURST & O'REARDON, LLP

1     Plaintiffs Joshua Rafofsky and Joshua Iron Wing ("Plaintiffs"),
2  individually and on behalf of all others similarly situated, upon personal
3  knowledge of facts pertaining to them and on information and belief as to all
4  other matters, by and through undersigned counsel, bring this Class Action
5  Complaint against defendant Nissan North America, Inc. ("Defendant").

6                        **NATURE OF THE CASE**

7     1.     This class action stems from Defendant's failure to deliver what was
8  promised and invokes this Court's jurisdiction under 28 U.S.C. § 1332(d).
9  Through a carefully crafted advertising campaign, Defendant represented to
10 consumers that 2014 Infiniti Q50 ("Q50") automobiles possessed an Infiniti
11 InTouch in-vehicle telematics and infotainment system ("InTouch") that would
12 provide access to certain popular smartphone applications, including Pandora,
13 Facebook, iHeartRadio, and Online Google Search; would provide email sync
14 and read back capabilities; and sync one's smartphone calendar with the InTouch
15 calendar app (collectively, the "Advertised Apps/Functions").

16    2.     Contrary to Defendant's representations, until late-September 2014,
17 at the earliest (if at all), purchasers and lessees of Q50s were unable to access the
18 Advertised Apps/Functions through InTouch.  And, even though Defendant has
19 claimed to be releasing products and services to make InTouch operate in
20 conformity with its representations, it has largely failed to notify Class members
21 of these developments.

22    3.     Defendant released the 2014 Q50 luxury sedan in the United States
23 in or around August 2013.  It was advertised as a containing "an array of
24 advanced technologies designed to add driving exhilaration and a new level of
25 active and passive safety systems."[1]  Defendant's promotional materials and

26
27 ───────────────
   [1]     Press Release, First Customers Take Delivery of Their New Infiniti Q50
28 (Aug. 8, 2013), available at http://infinitinews.com/en-US/infiniti/usa/releases/
   first-customers-take-delivery-of-their-new-infiniti-q50?page=26&query       (last
   visited Mar. 5, 2015).

public statements emphasized the technology offered by the Q50.  A major feature of the Q50, emphasized in the promotional materials, was the ability to access the Advertised Apps/Functions through the vehicle's InTouch system.

4.      In order to access the Advertised Apps/Functions through InTouch, Plaintiffs and the other Class members needed to download the Infiniti InTouch App (the "InTouch App") onto their smartphones and obtain an InTouch software update from an authorized Infiniti retailer.  It was not until mid-September 2014, that the InTouch App became available in the United States. Further, Defendant did not begin notifying Q50 owners and lessees that a software update was available and could be installed by authorized Infiniti retailers until the end of September 2014, if at all.  However, the software update leaves the InTouch system incomplete and continues to not provide the features promised in the promotional materials.

5.      Without the Advertised Apps/Functions, the Q50s purchased and leased by Plaintiffs and the other Class members did not and continues to not perform as advertised, as promised, and as warranted.  Consequently, Plaintiffs and the other Class members received a car worth less than as represented and less than what they paid for when purchasing and leasing their Q50.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d), because this matter was brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from Defendant, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

7.      Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within and Defendant resides within the Central District of California.

BLOOD HURST & O'REARDON, LLP

2        Case No.

CLASS ACTION COMPLAINT

**PARTIES**

8.     Plaintiff Joshua Rafofsky is a citizen of California and resides in this district.  He leased a Q50 in December 2013 from Infiniti of Glendale and repeatedly attempted to have the subject defect repaired by Defendant's authorized dealers in this district.

9.     Plaintiff Joshua Iron Wing is a citizen of California and resides in this district.  He leased his Q50 in Nevada in November 2013 and has repeatedly attempted to have the subject defect repaired in this district by one of Defendant's authorized dealers.

10.     Defendant Nissan North America, Inc. is a California corporation and its headquarters are located in Franklin, Tennessee.  Defendant is the North American subsidiary of Nissan Motor Co. Infiniti is a division of Defendant selling luxury vehicles within the United States and California.   Defendant designed, manufactured, marketed, distributed, leased, and sold, through its authorized dealers and distributors, the Q50 in the United States to Plaintiffs and the other Class members.

**FACTUAL BACKGROUND**

***The Q50 and the InTouch System***

11.     The Q50 is a luxury sedan that debuted in the United States in August 2013.  Since then, it has become Infiniti's best-selling vehicle in the United States.  More than 40,000 Q50s have been sold in the United States since its introduction.

12.     All Q50's are equipped with InTouch.  With the introduction of the 2014 model Q50 in August 2013, Defendant sought to stake Infiniti's claim as a leader of in-car technology.  The advertised abilities of InTouch to access the Advertised Apps/Functions were a key aspect of Defendant's marketing strategy to emphasize the technological superiority of the Q50.

00082186
**CLASS ACTION COMPLAINT**

BLOOD HURST & O'REARDON, LLP

13.     Through written advertisements, press releases, public statements, vehicle inserts, and other materials, Defendant represented that Q50s offered access to the Advertised Apps/Functions.   Defendant also portrayed Q50s' purported ability to access the Advertised Apps/Functions through visual displays, including pictures placed in advertisements and other promotional materials depicting the console of Q50s with Advertised Apps/Functions.   The message of these advertisements and promotional materials was that owners and lessees of Q50s are able to access the Advertised Apps/Functions through InTouch.

14.     When the Q50 was introduced at the North American International Auto Show in January 2013, Infiniti's former President, Johan de Nysschen, boasted, "We have new technologies that embrace the way people live today – seamless connectivity and personalization everywhere they go, including while in their car, with an optimized human-machine interface for ease of use."[2]  He was referring to InTouch.

15.     De Nysschen also boasted that the Q50 is the first Infiniti to "completely crystallize our future design, performance, and technology direction."   InTouch was touted as a system that "provides integration of smartphone apps in a way that is safe and easy to use while driving."   In summarizing the technology offered in the Q50, de Nysschen stated, "Some day, all cars will use this technology; but today, you can only get it on an Infiniti."[3]

---

[2]     2014 Infiniti Q50 Press Kit, infinitinews.com, available at http://infinitinews.com/en-US/infiniti/usa/channels/us-united-states-infiniti-models-infiniti-q50/presskits/us-2014-infiniti-q50-press-kit (last visited Mar. 5, 2015).

[3]     Press Release, 2014 Infiniti Q50 Sedan Makes World Debut at North American International Auto Show, at 4:20, 8:40, 9:12 (Jan. 14, 2013) http://infinitinews.com/en-US/infiniti/usa/releases/2014-infiniti-q50-sedan-makes-world-debut-at-north-american-international-auto-show?mode=print (last visited Mar. 5, 2015).

BLOOD HURST & O'REARDON, LLP

00082186

16.    For the period of time between September 5, 2013, and December 10, 2013, portions of the InTouch webpage at infinitiusa.com/intouch appeared as follows:



17.    The writing above the depiction of the Q50 says: "Infiniti InTouch: Spend your day moving ahead instead of catching up.  Infiniti InTouch™ offers the latest technologies to bring your world with you on your devices, your schedule, your terms.  It's not just advanced infotainment, it's advanced luxury that aspires to one thing alone–you."

18.    Below the depiction of the Q50 are the following statements: "Explore: Learn how Infiniti InTouch Apps™, Infiniti Connection™, and SiriusXM can keep you connected on the go"; and "Support: Discover the answer to frequently asked questions, get helpful resources and learn how to contact us."    Underneath these statements is the following: "INFINITI INTOUCH SYSTEM: Update – Expected Fall 2013 Availability."

19.    Scrolling down revealed the followed image:

///

///

///

CLASS ACTION COMPLAINT

00082186

BLOOD HURST & O'REARDON, LLP

**InTouch Smartphone Apps**
$19.99 per year after trial [*]

 **Facebook**
Stay in touch with friends and family while you're on the road.

 **iHeartRadio**
Stream more than 1,500 live radio stations with this free digital internet radio service.

 **Coming Soon**
Additional apps will be available soon. Availability will be announced periodically.

 **Coming Soon**
Additional apps will be available soon. Availability will be announced periodically.

 **Coming Soon**
Additional apps will be available soon. Availability will be announced periodically.

 **Online Search Powered by Google™**
Quickly find points of interest – like ATMs, restaurants and shops – no matter where you go.

 **Pandora**
Listen to free, personalized radio that only plays the music you love.

 **Coming Soon**
Additional apps will be available soon. Availability will be announced periodically.

 **Coming Soon**
Additional apps will be available soon. Availability will be announced periodically.

 **Coming Soon**
Additional apps will be available soon. Availability will be announced periodically.

**Infiniti Vehicle Apps**
Built into your vehicle

 **Driving Performance**
Monitor your vehicle performance visually through graphs and charts.

 **Clock**
Select a clock screen from a variety of styles with rich interface.

 **Compass**
Select a compass to match your style.

 **Maintenance Note**
Set custom maintenance reminders for a variety of vehicle items.

 **Email - Coming Soon**
Connect your web-based email service and have your messages read to you via TTS.

 **Calendar - Coming Soon**
Synchronize your personal calendar so you never miss an appointment.

20.     The webpage displayed trademarks or icons of Google, Facebook, Pandora, iHeartRadio, the InTouch App, along with other vehicle apps.   The page contained the following quote:

> Infiniti InTouch apps (available this fall) give you a world of connection every time you get in your vehicle.

Elsewhere it claimed that:

> [t]he apps that are essential to your digital life are now available inside your vehicle. Infiniti's revolutionary dual-touchscreen infotainment system gives you everything from Facebook updates to the music you love.

21.     Defendant also provided an interactive sample of the various features provided by the InTouch system at 24simulator.com/infiniti/itgen5/. This website allows users to access the various menus and submenus of the InTouch system, to tinker around, and see how the system works in the Q50. The webpage includes, among others, Google online search and Facebook, as well as icons for calendar and email.  When these icons are clicked, numerous

6      Case No.
CLASS ACTION COMPLAINT

submenus appear that illustrate the capabilities of these apps.  For example, the Facebook icon opens to submenus indicating that the user can check the newsfeed, update his or her status, view events, and access other features offered by the Facebook mobile app using the touchscreens of the InTouch system.  This webpage represents and affirms the fact that the Google search, Facebook, email, and calendar apps are available with the InTouch system and can be synched with the user's smartphone.

22.    Contrary to Defendant's representations, the InTouch App was not available in the U.S. for download until mid-September 2014, and the software upgrade required to access the Advertised Apps/Functions (excluding Pandora), to access and have emails read aloud, and to access a calendar, was not available until, at the earliest, late-September 2014, if at all.  As of March 12, 2015, owners and lessees could not access the Pandora app through InTouch.

23.    From the time of taking delivery, whether by lease or purchase, of their Q50s, until (at the earliest) late-September 2014, Plaintiffs and the other Class members were unable to access Facebook, Pandora, iHeartRadio, and Online Google Search, could not access email and have their emails read to them, and could not access their calendars through InTouch.

24.    As a result, they have not been able to enjoy the level of connectivity and integration described and promised in Defendant's statements, writings, and advertising.

25.    Defendant represented that InTouch Apps, including access to the Advertised Apps/Functions through InTouch, was available in the fall of 2013.

26.    When it became apparent that these features were not available in the fall of 2013, Defendant continued to assure Q50 owners and prospective owners that the features would be available imminently.

27.    Because of Defendant's emphasis on the Q50s' technological capabilities, customers have been understandably vocal and upset with InTouch's

CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

00082186

failures.   The following is a collection of some of the comments posted on various forums and review websites:

   a. One reviewer said:

> We were promised this app in Fall 2013, then December 2013, then they stopped talking about it altogether.  Now in September 2014 it is released and it is completely useless . . . . [N]one of the apps work.  Ridiculous experience on the Q50.[4]

   b. Another stated:

> I don't even care anymore.  Infiniti has lost my business.  At least for buying new model cars."[5]

   c. On November 26, 2013 and in response to rumors that InTouch would be fully available in February, one Q50 lessee said:

> The update is coming in February?  So I'm going to drive this car for 1/6 of the lease term without the software I bought the car for in the first place?[6]

   d. Q50SFlorida said on July 9, 2014:

> I have a brand new, 2 day old Q50S 2014, I was sold on the idea of the apps, but I guess they don't really work.  I had Facebook and Google search before I connected to the Intouch app, once connected these disappeared.  I was able to download the email application but now I can't connect, it says "can't connect to the server."  I contacted Infiniti and they said "they are working on the problem" so I guess I'll wait, even though I think the problem has been going on for a year and no answer.[7]

---

[4]   Infiniti InTouch app review at the Google Play Store, available at https://play.google.com/store/apps/details?id=com.infiniti.intouch&hl=en (last visited Mar. 5, 2015).

[5]   Review by Q50Aggie, available at http://www.infinitiq50.org/forum/q50-touch/15042-intouch-app-release-3.html (last visited Mar. 5, 2015).

[6]   Review by fjmdfw, available at http://www.infinitiq50.org/forum/q50-touch/15042-intouch-app-release-6.html (last visited Mar. 5, 2015).

[7]   Review by Q50SFlorida July 9, 2014, available at http://www.infinitiq50.org/forum/q50-touch/18354-intouch-app-android-download-10.html (last visited Mar. 5, 2015).

BLOOD HURST & O'REARDON, LLP

00082186

e.  One reviewer described her experience with Defendant's customer service:

> Have had this vehicle for 6 months and continue to have issues with the intouch system.  Have brought it back to the dealer twice and I am now convinced that they have no clue as what to do to resolve the issues.  Called Infiniti consumer hot line and that was a complete joke.  If the intouch worked properly it would be a great car, but it doesn't![8]

f.  On January 2, 2014, a frustrated reviewer said:

> This is getting ridiculous, apps like Pandora have been on dozens of cars for almost two years, how is it that Infiniti releases a car that is supposed to become known for its technology and 5 months later we still don't have apps that corolla owners had a year ago?[9]

g.  On January 20, 2014, a reviewer said:

> [The calendar] and the advertised email functionality were for me major factors in my decision to choose this vehicle over others.  The fact that a third of a year later we are still waiting for this functionality, with no real information on when it will arrive, is very disappointing.[10]

h.  Another stated:

> They advertised it, the salesperson bragged all about how cool it's going to be "Next Month when they are released," and it's not here.  I'm not sure how big a part that played in my purchasing decision, but I know it meant something.[11]

---

[8]     Review by Sucker July 1, 2014, available at http://www.cars.com/infiniti/q50/2014/consumer-reviews (last visited Mar. 5, 2015).

[9]     Review by BenW, Jan. 2, 2014, available at http://www.infinitiq50.org/forum/new-2014-q50-general-discussion-forum/5065-intouch-apps-late-availability-3.html (last visited Mar. 5, 2015).

[10]     Review by MikeElmendorf Jan 20, 2014, available at http://www.infinitiq50.org/forum/new-2014-q50-general-discussion-forum/5065-intouch-apps-late-availability-5.html (last visited Mar. 5, 2015).

[11]     Review by BNB-Ryan, available at http://www.infinitiq50.org/forum/new-2014-q50-general-discussion-forum/5065-intouch-apps-late-availability-9.html (last visited Mar. 5, 2015).

BLOOD HURST & O'REARDON, LLP

00082186

i.  Another reviewer opined:

> I want/need Calendar and Emails, I'm a System Manager and believe me, I get tons of email that I need to reply ASAP. That indeed was part of my decision to buy the car, so I can say that on that regard, I'm feeling [emoticon of a red face frowning].[12]

28.    Defendant has not publicly indicated a reason for the delay and general unavailability of the InTouch App and the Advertised Apps/Functions from August 2013, when the Q50 was introduced, until September 2014.

29.    Defendant has refused to acknowledge it made mistakes or attempt to address its customers' concerns.  When a customer asked on Defendant's Facebook page when the Q50 software update would be ready to install, Defendant responded only: "For any future updates please visit the InTouch website . . . ."

30.    Another customer indicated that Defendant gave him the following information:

> We are sorry to hear about the experience you are having with your 2014 Infiniti Q50 and apologize for any inconvenience this may have caused you.  Infiniti is still diligently working on Infiniti InTouch Apps™.  When the new feature will be available has not been determined.  Infiniti will, however, provide more information when it is available.  We apologize we are not currently able to provide more specific detail.  The patience of all our valued customers is greatly appreciated while we give the matter our full and utmost attention.[13]

31.    On or about September 29, 2014, Defendant finally began notifying certain Class members that the InTouch App was available and that they could

---

[12]    Review by erasat Jan. 17, 2014, available at http://www.infinitiq50.org/forum/new-2014-q50-general-discussion-forum/5065-intouch-apps-late-availability-4.html (last visited Mar. 5, 2015).

[13]    Review by FolsomDude Sept. 18, 2014, available at http://www.infinitiq50.org/forum/q50-touch/45058-we-have-apps-ladies-gentlemen-4.html (last visited Mar. 5, 2015).

Case No.

CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

00082186

1  access the Advertised Apps/Functions (excluding Pandora) via InTouch after

2  obtaining a software update from one of Defendant's authorized retailers.

3       32.    During the period of time when the Advertised Apps/Functions

4  were unavailable, Defendant did not explain the reason for the delay and

5  unavailability of the InTouch App and has not offered any compensation to

6  Plaintiffs and the other Class members for the substandard performance of their

7  Q50s and the unavailability of the Advertised Apps/Functions.  When it became

8  apparent that Defendant could not deliver the Q50 with Advertised

9  Apps/Functions as advertised, Defendant assured customers that InTouch would

10 perform in conformity with its representations at certain specified future dates.

11 Then, after repeatedly failing to deliver on these promises, Defendant simply

12 informed Q50 owners that the InTouch App was not available, that it did not

13 know when the InTouch App would be available, and asked Q50 owners to wait

14 until an unspecified future date for it to offer the capabilities and functions that it

15 promised Q50 owners could enjoy "today."

16 **_Plaintiff Joshua Rafofsky's Experience with the Q50 InTouch System_**

17      33.    As Plaintiff Joshua Rafofsky's lease on his Infiniti G37 was

18 expiring in late 2013, he began researching the Q50 and other competing cars

19 and technology such as Apple's CarPlay, Google's Android Auto, as well as

20 products from Parrot, Kenwood, and Pioneer.  As a technology consultant,

21 Rafofsky was in the market for cars that offered premium technological features.

22      34.    Defendant aggressively marketed the 2014 Q50, the InTouch

23 system, and the Advertised Apps/Functions to Rafofsky.  Defendant assured him

24 that InTouch was one of the best systems currently offered.  It further assured

25 him that InTouch's "App Garage" would provide access to music apps and

26 services, such as Pandora and iHeartRadio, with driver-friendly interfaces that

27 improved the vehicle's safety.

28

BLOOD HURST & O'REARDON, LLP

Case No.
00082186
**CLASS ACTION COMPLAINT**

35.     Defendant's assurances, affirmations of fact, and representations concerning the characteristics, quality, and performance capabilities of the InTouch system were in accord with a uniform directive to all authorized dealers by Defendant to emphasize the InTouch system and the Advertised Apps/Functions as a selling point.

36.     Rafofsky was also persuaded that the Q50 was a more state-of-the-art vehicle because a connected smartphone could remain in the glove box and be accessed through the InTouch system.  This aspect of the system would be attractive to consumers in jurisdictions, such as this, where using smartphones while driving is generally prohibited by law.  Rafofsky placed a down payment on a 2014 Q50 in reliance on these representations.

37.     Relying upon the representations of Defendant, Rafofsky leased a Q50 in December 2013.  The decision to lease a Q50 was influenced in significant part by Defendant's representations regarding the availability of the Advertised Apps/Functions.

38.     At the time Rafofsky took possession of the Q50 and subsequent to his placing a down payment on the Q50, Rafofsky was told that the Advertised Apps/Functions aspect of the InTouch system was not quite ready, but that it would be released in a few weeks.  That was disappointing to Rafofsky because up until that point he had not been informed of any late availability or shortcomings of the system.

39.     Shortly after leasing his car, Rafofsky complained to Defendant about the unavailability of the Advertised Apps/Functions and the sluggish, cumbersome overall performance of the InTouch system.  He was told that the problems were the result of early release issues and that a bug fix was shortly forthcoming.

40.     In or around the middle of 2014, Rafofsky brought in his Q50 for regular servicing and maintenance.  At that time, Rafofsky was informed of a

BLOOD HURST & O'REARDON, LLP

Case No.

CLASS ACTION COMPLAINT

"firmware" update to improve the InTouch system. Rafofsky experienced no improvement in the performance of the InTouch system after receiving the update. Moreover, the Advertised Apps/Functions were still missing.

41. In September of 2014, Rafofsky received a notice from Infiniti that an update was finally ready for installation. He returned to an Infiniti Service station and dropped his car off for the upgrade. The upgrade was unsuccessful, and Rafofsky was told that he needed a replacement computer.

42. Rafofsky returned to the Infiniti Service station a week later to get the new computer installed. Once the new computer was installed, Rafofsky discovered that the new upgrade made available only the Google search and Facebook apps. The music apps, which he had hoped for, were still unavailable, contrary to Defendant's representations and Rafofsky's reasonable expectations.

***Plaintiff Joshua Iron Wing's Experience with the Q50 InTouch System***

43. Plaintiff Joshua Iron Wing leased a model year 2014 Q50 on November 5, 2013, from Park Place Infiniti in Las Vegas, Nevada, and continues to lease his Q50.

44. The capabilities of the InTouch System with respect to the Advertised Apps/Functions were a significant part of Iron Wing's decision to purchase a Q50 rather than one of its competitors. Iron Wing is interested in new technologies, and the salesmen emphasized heavily the features of the InTouch Apps and system. Prior to the lease, Iron Wing was made familiar with the InTouch system and the touted capabilities which it has yet either to be capable of performing or actually performing, and relied on same, through Infiniti advertisements, such as the Infiniti website, and representations made by the sales staff at the Infiniti dealership from which the vehicle was leased. These representations were made in accordance with Infiniti directives, policies, and knowledge regarding the sale of Q50s.

BLOOD HURST & O'REARDON, LLP

00082186
Case No.
**CLASS ACTION COMPLAINT**

BLOOD HURST & O'REARDON, LLP

45.    Prior to leasing his Q50, Iron Wing was told by sales staff that he would be able to use his personal email and calendar, Google, Pandora, and Facebook on the InTouch system.  Although he was informed that all these capabilities were not presently available at the time of leasing, the sales staff assured him that they would be available within a few weeks – a month at most.

46.    Iron Wing leased the Q50 based in material part on Defendant's representations that the car's InTouch system would be able to access the Advertised Apps/Functions.

47.    From the time Iron Wing took delivery of his Q50 until about mid-November 2014, however, he has been unable to access any of the Advertised Apps/Functions via InTouch because the Advertised Apps/Functions had not been made available by Defendant.

48.    Iron Wing inquired about the status of the Advertised Apps/Functions more than ten times over the intervening one-year period and was told repeatedly by Defendant to wait just a little longer for the Advertised Apps/Functions to become available.  He also experienced issues and "bugs" in the InTouch system, such as screen blackout, volume controls not functioning, and error messages appearing over the backup camera while in use interfering with the view.

49.    Iron Wing took his Q50 in for service in Redondo Beach, California to address these issues and had his computer replaced.  The problems persisted.

50.    Sometime in mid-November 2014, Iron Wing was informed of a software update while taking his car in for an oil change.  Even with this update, his e-mail does not function, there are no music apps, and the system still is plagued by problems.  As a result, Iron Wing overpaid for his Q50 because his vehicle did not possess the qualities and attributes Defendant represented it had and would have within a specified period of time.

CLASS ACTION COMPLAINT

00082186

1

## CLASS ALLEGATIONS

2      51.   This action is brought as a class action pursuant to Fed. R. Civ. P.

3   23(a) and (b)(3), on behalf of a Class defined as follows:

4          All persons and entities that purchased or leased a 2014
           Infiniti Q50 for end use and not for resale.
5

6      Excluded from the Class are: (i) Defendant and its officers and directors,

7   agents, affiliates, subsidiaries, authorized distributors and dealers, (ii) all Class

8   Members that timely and validly request exclusion from the Class, and (iii) the

9   Judge presiding over this action.

10     52.   Plaintiffs also seek certification under Fed. R. Civ. P. 23(a) and

11  (b)(3) of the following proposed state classes ("State Classes"):

12         All persons and entities that purchased or leased a 2014
           Infiniti Q50 for end us and not for resale in the State of California.
13

14         All persons and entities that purchased or leased a 2014
           Infiniti Q50 for end use and not for resale in the State of Nevada.
15

16     Excluded from the State Classes are: (i) Defendant and its officers and

17  directors, agents, affiliates, subsidiaries, authorized distributors and dealers, (ii)

18  all State Class Members that timely and validly request exclusion from the State

19  Class, and (iii) the Judge presiding over this action.

20     53.   Certification of Plaintiffs' claims for classwide treatment is

21  appropriate because Plaintiffs can prove the elements of their claims on a

22  classwide basis using the same evidence as would be used to prove those

23  elements in individual actions alleging the same claims.

24     54.   The members of the Class are so numerous that joinder of the Class

25  members would be impracticable.  On information and belief, Class members

26  number in the thousands.  The precise number of Class members and their

27  addresses are presently unknown to Plaintiffs, but may be ascertained from

28  Defendant's records.

Case No.
CLASS ACTION COMPLAINT

00082186

BLOOD HURST & O'REARDON, LLP

55. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

A. whether Defendant engaged in the conduct alleged herein;

B. whether Defendant misrepresented that purchasers and lessees of model year 2014 Q50s would be able to access the Advertised Apps using InTouch, access emails and have emails read aloud through InTouch, and access a calendar through InTouch;

C. whether Defendant's representations regarding the functionality of Q50s' InTouch systems were likely to mislead a reasonable consumer;

D. whether Defendant breached express warranties with Plaintiffs and the other Class members when it produced, distributed, and sold Q50s that lacked the capabilities represented;

E. whether Defendant violated the Magnuson-Moss Warranty Act;

F. whether Defendant violated California's Consumers Legal Remedies Act;

G. whether Defendant's conduct violated the Unfair Competition Law;

H. whether Plaintiffs' and the other Class members' Q50s were worth less than as represented as a result of the conduct alleged herein;

I. whether Plaintiffs and the other Class members have been damaged and, if so, the extent of such damages; and

J. whether Plaintiffs and the other Class members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

56. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1   the other Class members.  Similar or identical statutory and common law

2   violations, business practices, and injuries are involved.  Individual questions, if

3   any, pale by comparison, in both quality and quantity, to the numerous common

4   questions that dominate this action.

5        57.   Plaintiffs' claims are typical of the claims of the other Class

6   members because, among other things, Plaintiffs and the other Class members

7   were injured through the substantially uniform misconduct described above.

8   Plaintiffs are advancing the same claims and legal theories on behalf of

9   themselves and all other Class members, and no defense is available to

10  Defendant that is unique to Plaintiffs.

11       58.   Plaintiffs are adequate Class representatives because they will fairly

12  represent the interests of the Class.  Plaintiffs have retained counsel with

13  substantial experience in prosecuting consumer class actions.  Plaintiffs and their

14  counsel are committed to prosecuting this action vigorously on behalf of the

15  Class they seek to represent, and have the resources to do so.  Neither Plaintiffs

16  nor their counsel have any interest adverse or antagonistic to those of the Class.

17       59.   A class action is superior to any other available means for the fair

18  and efficient adjudication of this controversy, and no unusual difficulties are

19  likely to be encountered in the management of this class action.  The damages or

20  other detriment suffered by Plaintiffs and the other Class members are relatively

21  small compared to the burden and expense that would be required to individually

22  litigate their claims against Defendant, so it would be impracticable for Class

23  members to individually seek redress for Defendant's wrongful conduct.  Even if

24  Class members could afford individual litigation, the court system should not be

25  required to undertake such an unnecessary burden.  Individualized litigation

26  would also create a potential for inconsistent or contradictory judgments, and

27  increase the delay and expense to all parties and the court system.  By contrast,

28  the class action device presents far fewer management difficulties and provides

Case No.

CLASS ACTION COMPLAINT

00082186

the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I

### Violation of Magnuson-Moss Warranty Act

### (National Class or, in the Alternative, Each State Class)

60.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

61.     Each Plaintiff is a "consumer" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(3).

62.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

63.     The Q50 is a "consumer product" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(1).

64.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer that is damaged by the failure of a warrantor to comply with a written warranty.

65.     Defendant's representations as described herein, such as on Defendant's website and brochures, that Plaintiffs and the other Class members would be able to access the Advertised App/Functions through Q50s' InTouch are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

66.     Defendant breached the warranties as described herein.  Contrary to Defendant's representations, Plaintiffs' and the other Class members' Q50s were not equipped with InTouch systems that could access the Advertised Apps/Functions.  As such, Plaintiffs' and the other Class members' Q50s did not function as promised.

67.     In addition, Defendant's 2014 New Vehicle Limited Warranty provides that "Infiniti warrants all parts of your 2014 Infiniti vehicle supplied by

18        Case No.

1   Infiniti, except for those listed under the caption "WHAT IS NOT COVERED."

2   No item under the section "WHAT IS NOT COVERED" describes failures to or

3   unavailability of InTouch.

4   68.   Plaintiffs' and the other Class members' Q50s were delivered

5   equipped with InTouch systems that suffered from defects of materials or

6   workmanship.  Defendant failed to cure these defects after several failed attempts

7   at updating the computer software.   And, although some of the Advertised

8   Apps/Functions are finally available, defects still persist in the InTouch system

9   and the Advertised Apps/Functions.

10   69.   Defendant knew when it made the warranties and sold the Q50 to

11   Plaintiffs and the other Class members that they were unable to access the

12   Advertised Apps through InTouch, could not access their emails or have their

13   emails read aloud through InTouch, and could not access their calendars through

14   InTouch.

15   70.   Defendant knew, or should have known, of its misrepresentations

16   and omissions regarding the capabilities of Q50s or consciously disregarded their

17   accuracy, yet proceeded with a coordinated advertising campaign through which

18   Defendant misrepresented that Q50s were capable of performing tasks and

19   functions that they could not.

20   71.   Plaintiffs and the other Class members were damaged as a result of

21   Defendant's breaches of the written warranties, because they received a product

22   incapable of performing the functions Defendant represented such product was

23   capable of performing, rendering their Q50s less valuable than as represented.

24   ## COUNT II

25   ### Breach of Express Warranty

26   ### (National Class or, in the Alternative, the California Class)

27   72.   Plaintiffs reallege and incorporate by reference the preceding

28   paragraphs as if fully set forth herein.

BLOOD HURST & O'REARDON, LLP

73.   Plaintiffs and the other Class members formed a contract with Defendant at the time they purchased or leased their Q50s.  The terms of the contract include the promises and affirmations of fact and express warranties made by Defendant.

74.   Plaintiffs' and the other Class members' Q50s did not perform in conformity with Defendant's affirmations of fact and promises.  The InTouch App, which is required to enable connectivity between one's smartphone and the InTouch system, has not been made available until mid-September 2014.  And, it was not until late-September 2014, if at all, that Defendant began making available at authorized Infiniti retailers the software update required to access the Advertised Apps (excluding Pandora), email, and the calendar through InTouch. As of March 12, 2015, owners and lessees of Q50s could not access the Pandora app through InTouch.

75.   All conditions precedent have occurred or been performed. Defendant has actual knowledge that it breached express warranties with Plaintiffs and the other Class members related to the Q50.

76.   Defendant breached the terms of the express warranties with Plaintiffs and the other Class members by not providing Q50s with the capabilities and functionality as advertised.

77.   As the foreseeable and actual result of Defendant's breach of express warranty, Plaintiffs and the other Class members were damaged in an amount that is the difference between the value of Q50s if they had possessed the qualities and attributes represented and the value of the Q50s Plaintiffs and the other Class members actually received.

///

///

BLOOD HURST & O'REARDON, LLP

Case No.

CLASS ACTION COMPLAINT

00082186

**COUNT III**

**Breach of Contract under California Law**

**(National Class or, in the Alternative, the California Class)**

78.　Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

79.　Plaintiffs and the other Class members individually formed contracts with Defendant for the purchase of a Q50 equipped with an InTouch system.

80.　The contract included terms regarding delivery of an InTouch system capable of running the Advertised Apps/Functions on a certain date. Plaintiffs and the other Class members bargained for this term in the sales contract.

81.　Defendant breached each of these contracts when it failed to deliver an InTouch system capable of running the Advertised Apps/functions on that certain date.　Although Defendant eventually delivered portions of the Advertised Apps/Functions, the delivery was nearly a year overdue and did not meet specifications.　Plaintiffs and the other Class members have been without the Advertised Apps/Functions from the time they took delivery to about late-September 2014 at the earliest.　Certain features, including but not limited to certain music apps and e-mail capabilities are still unavailable or substandard.

82.　Plaintiffs and the other Class members were deprived of the benefit of the bargain as a result, overpaid for their Q50s, and are entitled to actual damages they sustained as a result of Defendant's breach, consequential, and incidental losses.

///

///

BLOOD HURST & O'REARDON, LLP

Case No.
**CLASS ACTION COMPLAINT**

00082186

**COUNT IV**

**Violation of the California Consumers Legal Remedies Act**

**(National Class or, in the Alternative, the California Class)**

83. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

84. Defendant's conduct, as described herein, in misrepresenting Q50s' technological features and emphasizing Q50s' InTouch system as capable of performing certain tasks it was unable to perform, while omitting the fact that InTouch could not access the Advertised Apps/Functions, violates the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*. Specifically, Defendant violated the CLRA through advertisements, promotional material, packaging materials, such as vehicle inserts, and statements by salespersons when it portrayed the InTouch system as capable of interfacing with several popular mobile phone apps, by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions that were intended to result in, and did result in, the sale of the product:

a. representing that the Q50 has characteristics, uses and benefits which it does not have;

b. representing that the Q50 is of a particular standard, quality, or grade, when it is not;

c. advertising the Q50 with intent not to sell it as advertised; and

d. representing that the Q50 has been supplied in accordance with previous representations when it has not.

85. Defendant violated the Act by misrepresenting and failing to disclose material facts as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts they were obligated to disclose.

BLOOD HURST & O'REARDON, LLP

Case No.

**CLASS ACTION COMPLAINT**

86.     Pursuant to California Civil Code § 1782(d), Plaintiffs, individually and on behalf of the other members of the Class, seek a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

87.     Pursuant to § 1782 of the Act, Plaintiffs notified Defendant in writing by certified mail of the particular violations of § 1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.  A copy of the letter is attached hereto as Exhibit A.

88.     If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the Act, Plaintiffs will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

89.     Defendant's conduct is fraudulent, wanton, and malicious.

90.     Pursuant to §1780(d) of the Act, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

## COUNT V

### Violation of California's Unfair Competition Law

### (National Class or, in the Alternative, the California Class)

91.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

92.     The Unfair Competition Law, Business & Professions Code § 17200, *et seq.* ("UCL"), and similar laws in other states, prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.  In the course of conducting business, Defendant committed unlawful business practices by, among other things, making the representations (which also constitutes advertising within the meaning of §

BLOOD HURST & O'REARDON, LLP

00082186

**CLASS ACTION COMPLAINT**

17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16) and Business & Professions Code §§ 17200, *et seq.*, 17500, *et seq.*, and the common law.  Plaintiffs, individually and on behalf of the other Class members, reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

93.   In the course of conducting business, Defendant committed "unfair" business practices by, among other things, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts regarding the Q50 in its advertising campaign, as alleged.  There is no societal benefit from false advertising – only harm.  Plaintiffs and the other Class members overpaid for the InTouch system that does not confer the benefits it promises.   While Plaintiffs and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and omissions.  As a result, Defendant's conduct is "unfair," as it offended an established public policy.   Further, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

94.   Further, as set forth in this Complaint, Plaintiffs allege violations of consumer protection, unfair competition, and truth in advertising laws in California and other states, resulting in harm to consumers.  Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, *et seq.*  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

95.   Business & Professions Code § 17200, *et seq.*, also prohibits any "fraudulent business act or practice."  In the course of conducting business,

BLOOD HURST & O'REARDON, LLP

1  Defendant committed "fraudulent business act[s] or practices" by, among other
2  things, prominently making the representations (which also constitute advertising
3  within the meaning of § 17200) and omissions of material facts regarding the
4  InTouch system in its advertising campaign.

5  96.    Defendant's actions, claims, omissions, and misleading statements,
6  as more fully set forth above, were also false, misleading and/or likely to deceive
7  the consuming public within the meaning of Business & Professions Code §
8  17200, *et seq.*

9  97.    Plaintiffs have in fact been deceived as a result of their reliance on
10  Defendant's material representations and omissions, which are described above.
11  Plaintiffs have suffered injury in fact and lost money as a result of purchasing the
12  deceptively advertised Q50 by paying more than they should have and expending
13  time, effort, and money to attempt to have the InTouch system repaired, when no
14  repair was possible.

15  98.    Defendant knew, or should have known, that its material
16  representations and omissions would be likely to deceive the consuming public
17  and result in consumers purchasing the Q50 and, indeed, intended to deceive
18  consumers.

19  99.    As a result of the deception, Defendant has been able to reap unjust
20  revenue and profit.

21  100.   Unless restrained and enjoined, Defendant will continue to engage
22  in the above-described conduct.  Accordingly, injunctive relief is appropriate.

23  101.   Plaintiffs, on behalf of themselves, all others similarly situated, and
24  the general public, seek restitution from Defendant of all money obtained from
25  Plaintiffs and the other members of the Class collected as a result of unfair
26  competition, an injunction prohibiting Defendant from continuing such practices,
27  corrective advertising, and all other relief this Court deems appropriate,
28  consistent with Business & Professions Code § 17203.

BLOOD HURST & O'REARDON, LLP

00082186
CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

**COUNT VI**

**Violation of the Nevada Deceptive Trade Practices Act**

**(Nevada Class)**

102.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.  For purposes of this Count, "Plaintiff" refers only to Joshua Iron Wing.

103.   Nev. Rev. Stat. §598.0903, *et seq.*, provides that the following types of conduct constitute deceptive trade practices:

a.     knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith;

b.     representing that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style, or model;

c.     advertising goods or services with intent not to sell or lease them as advertised;

d.     knowingly making any other false representation in a transaction;

e.     offering to sell or lease goods or services which the seller or lessor in truth may not intend or desire to sell or lease, and refusing to show the goods advertised or showing or demonstrating defective goods for sale or lease which are unusable or impractical for the purposes set forth in the advertisement.

104.   Defendant engaged in conduct constituting deceptive trade practices as defined above.  Defendant knowingly and uniformly misrepresented the quality, capabilities, characteristics, and benefits of the InTouch system and the availability of the Advertised Apps/Functions in advertisements and in sales

Case No.
**CLASS ACTION COMPLAINT**

00082186

pitches.  Defendant advertised the Q50 as equipped with an InTouch system that was capable of performing certain tasks which it was at the time unable to perform with the intent to induce sales transactions in reliance on those advertisements.  Then, Defendant assured Plaintiff and the other Nevada Class members that the non-existent advertised capabilities would be available on a specific future date.  Defendant made these representations knowing them to be false or consciously disregarding their accuracy or truth to induce Plaintiff and the other Nevada Class members to go forward with the transaction.  Defendant omitted the important and material facts regarding the existence of defects in the InTouch system, their nature, and the extent of the issues, and that the defect would result in the unavailability of the Advertised Apps/Functions until late-September 2014, at the earliest.

105.  Plaintiff and the other Nevada Class members reasonably relied on the false representations and omissions of material facts and were induced to purchase or lease the Q50 to their detriment.

106.  Plaintiff and the other Nevada Class members were injured and suffered actual loss as a direct and foreseeable result of Defendant's deceptive trade practices.  They overpaid for their Q50s because, until late-September 2014, at the earliest, they were unable to enjoy the Advertised Apps/Functions and the technological and safety features that they bargained for and expected.

## COUNT VII

### Breach of Express Warranty Under Nevada Law

### (Nevada Class)

107.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.  For purposes of this Count, "Plaintiff" refers only to Joshua Iron Wing.

108.  Defendant was and continues to be a merchant of Q50s and other motor vehicles.

Case No.

**CLASS ACTION COMPLAINT**

00082186

BLOOD HURST & O'REARDON, LLP

109.   Defendant expressly warranted, through broadly disseminated advertising materials, online statements, and one-to-one communications with individual Nevada Class members, in writing and orally, that Q50s were and would be capable of running the Advertised Apps/Functions and possessing a premium in-vehicle computer offering specific technological and safety features, such as increased connectivity to one's smartphone and important popular mobile applications.   These statements were affirmations of fact, were uniform and were made, caused to be made, or disseminated at the directive of Defendant.

110.   The statements regarding the capabilities, qualities, and characteristics of the InTouch system and the availability of the Advertised Apps/Functions formed part of the basis of the bargain between Defendant and Plaintiff and the other Nevada Class members.

111.   Defendant breached these warranties when it delivered to Plaintiff and the other Nevada Class members Q50s that did not conform to the warranties, representations, and specifications.

112.   In addition, Defendant expressly warranted in writing, through the New Vehicle Limited Warranty, that it would undertake to repair or replace any materials or workmanship of any part supplied by Defendant.   Defendant has not repaired or replaced the defects in the Q50's InTouch system.

113.   Defendant breached this warranty when it failed to repair or replace the defects that affected the InTouch system and caused the unavailability of the Advertised Apps/Functions until late-September 2014, at the earliest. Defendant's prior efforts failed to cure all the problems affecting the materials and workmanship and they exist to this date.   Furthermore, the limited warranty failed of its essential purpose because Defendant has failed or refused to cure the defects within a reasonable time.

114.   Defendant knew when it made the warranties and sold the vehicles that the Q50s did not conform to the warranties and were defective.

BLOOD HURST & O'REARDON, LLP

00082186

CLASS ACTION COMPLAINT

1    Nevertheless, Defendant misrepresented, failed to correct other prior
2    misrepresentations it had a duty to correct, and omitted material facts regarding
3    the InTouch system.  As a result, Plaintiff and the other Nevada Class members
4    were induced to purchase or lease the vehicles under false and fraudulent
5    pretenses.

6    115.  All conditions precedent have occurred or been performed.
7    Defendant was provided notice of these issues by the many consumer complaints
8    it has received or that have been publicized, including previous legal actions,
9    arising from the InTouch system's defects and the unavailability of the
10   Advertised Apps/Functions.

11   116.  Plaintiff and the other Nevada Class members overpaid for their
12   Q50s and sustained injury as a result of Defendant's breach of express
13   warranties.

14                          **COUNT VIII**
15              **Breach of Contract Under Nevada Law**
16                        **(Nevada Class)**

17   117.  Plaintiffs reallege and incorporate by reference the preceding
18   paragraphs as if fully set forth herein.  For purposes of this Count, "Plaintiff"
19   refers only to Joshua Iron Wing.

20   118.  Plaintiff and the other Nevada Class members individually formed
21   contracts with Defendant for the purchase of a Q50 equipped with an InTouch
22   system that conformed to specifications and advertising representations.

23   119.  The contract included terms regarding delivery of an InTouch
24   system capable of running the Advertised Apps/Functions on a certain date.
25   Plaintiff and the other Class members bargained for this term in the sales
26   contract.

27

28

BLOOD HURST & O'REARDON, LLP

**CLASS ACTION COMPLAINT**

120.   Defendant breached each of these contracts when it failed to deliver an InTouch system capable of running the Advertised Apps/Functions on that date.

121.   Plaintiff and the other Nevada Class members were deprived of the benefit of the bargain as a result, overpaid for their Q50s, and are entitled to actual damages, consequential, and incidental losses they sustained as a result of Defendant's breach.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A.   certifying the Class under Federal Rule of Civil Procedure 23 as requested herein;

B.   appointing Plaintiffs as Class Representatives and undersigned counsel as Class Counsel;

C.   finding that Defendant engaged in the unlawful conduct as alleged herein;

D.   awarding Plaintiffs and the other Class members damages;

E.   awarding Plaintiffs and the other Class members declaratory and injunctive relief;

F.   awarding Plaintiffs and the other Class members restitution and disgorgement;

G.   awarding Plaintiffs and the other Class members exemplary damages, should the finder of fact determine that Defendant acted with malice or oppression;

H.   awarding Plaintiffs and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

BLOOD HURST & O'REARDON, LLP

Case No.
CLASS ACTION COMPLAINT

00082186

1    I.    awarding Plaintiffs and the other Class members reasonable

2    attorneys' fees, costs, and expenses; and

3    J.    granting such other relief as the Court deems just and appropriate.

4    **JURY TRIAL DEMAND**

5    Plaintiffs, individually and on behalf of all others similarly situated,

6    hereby request a jury trial, pursuant to Federal Rule of Civil Procedure 38, on all

7    claims so triable.

8

9    Dated: March 12, 2015

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
PAULA M. ROACH (254142)

By: _____
TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
proach@bholaw.com

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW
ERICH P. SCHORK
1 North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: 312/621-2000
312/641-5504 (fax)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

*Attorneys for Plaintiffs*

*(Left margin, vertical): BLOOD HURST & O'REARDON, LLP*

00082186

31    Case No.
CLASS ACTION COMPLAINT