1
2
3
4
5
6

**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No.: 264296)
klee@jenner.com
Daniel D. Welsh (Cal. Bar No.: 288904)
dwelsh@jenner.com
633 W. 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: 213 239-5100
Facsimile: 213 239-5199

7
8
9
10
11
12

**JENNER & BLOCK LLP**
Peter J. Brennan (*pro hac vice*)
pbrennan@jenner.com
Jonathan A. Enfield (*pro hac vice*)
jenfield@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: 312 222-9350
Facsimile: 312 527-0484

13

*Counsel for Defendant*
*Nissan North America, Inc.*

14
15
16

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

17
18
19
20
21
22
23
24

| | |
|---|---|
| JOSHUA RAFOFSKY and JOSHUA IRON WING, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>   v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>             Defendant. | Case No. 2:15-CV-01848 AB (MANx)<br><br>**CLASS ACTION**<br><br>**NISSAN NORTH AMERICA, INC.'S ANSWER TO PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>Complaint Filed: March 12, 2015 |

25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NISSAN NORTH AMERICA, INC.'S ANSWER**
**TO PLAINTIFFS' CLASS ACTION COMPLAINT**

Defendant Nissan North America, Inc. ("Nissan"), by and through counsel, submits this Answer to the Complaint of Joshua Rafofsky and Joshua Iron Wing ("Plaintiffs") (March 12, 2015, ECF No. 1).  Except as expressly admitted below, Nissan denies each and every allegation in the Complaint.  All admissions set forth below are limited to the specific factual allegation(s) recited therein and do not constitute an admission as to any purported conclusion, characterization, implication, or speculation that arguably could be asserted to follow from an admitted fact.  On September 11, 2015, Nissan filed a motion to dismiss Count I of Plaintiffs' Complaint.  On September 22, 2015, Plaintiffs voluntarily dismissed Count I.  (ECF No. 39.)  Nissan therefore does not answer Count I of Plaintiffs' Complaint in this Answer.

Nissan specifically answers the allegations of the Complaint as follows.

## NATURE OF THE CASE

1.     This class action stems from Defendant's failure to deliver what was promised and invokes this Court's jurisdiction under 28 U.S.C. § 1332(d).  Through a carefully crafted advertising campaign, Defendant represented to consumers that 2014 Infiniti Q50 ("Q50") automobiles possessed an Infiniti InTouch in-vehicle telematics and infotainment system ("InTouch") that would provide access to certain popular smartphone applications, including Pandora, Facebook, iHeartRadio, and Online Google Search; would provide email sync and read back capabilities; and sync one's smartphone calendar with the InTouch calendar app (collectively, the "Advertised Apps/Functions").

**ANSWER:**     Nissan admits that Plaintiffs claim jurisdiction under 28 U.S.C. § 1332(d). Nissan admits that at certain points in time it advertised that the 2014 Infiniti Q50 had an InTouch computer system ("InTouch") through which Pandora, Facebook, iHeartRadio, and Google Online Search would later become accessible, through which emails could later be accessed and read aloud, and through which a calendar would later

become accessible.  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

2.    Contrary to Defendant's representations, until late-September 2014, at the earliest (if at all), purchasers and lessees of Q50s were unable to access the Advertised Apps/Functions through InTouch.  And, even though Defendant has claimed to be releasing products and services to make InTouch operate in conformity with its representations, it has largely failed to notify Class members of these developments.

**ANSWER:**    Nissan admits that Google Online Search, Facebook, Email, and Calendar became accessible via InTouch in September 2014 as part of a software update performed at dealerships that offered improvements to the InTouch system.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

3.    Defendant released the 2014 Q50 luxury sedan in the United States in or around August 2013.  It was advertised as a containing "an array of advanced technologies designed to add driving exhilaration and a new level of active and passive safety systems."[1]  Defendant's promotional materials and public statements emphasized the technology offered by the Q50.  A major feature of the Q50, emphasized in the promotional materials, was the ability to access the Advertised Apps/Functions through the vehicle's InTouch system.

[1] [Citation footnote omitted.]

**ANSWER:**    Nissan admits that it began selling the 2014 Q50 in the United States in August 2013.  Nissan admits that the press release cited in paragraph 3 states that the Q50 offers "an array of advanced technologies designed to add driving exhilaration and a new level of active and passive safety systems."  Nissan admits that at certain points in time some of its promotional materials related to the 2014 Q50 mentioned certain technological features, including the InTouch system and the apps (Facebook, Google

Online Search, Pandora, and iHeartRadio) that were planned to become accessible later as well as the email and calendar functions that would later become available or accessible. Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

4.      In order to access the Advertised Apps/Functions through InTouch, Plaintiffs and the other Class members needed to download the Infiniti InTouch App (the "InTouch App") onto their smartphones and obtain an InTouch software update from an authorized Infiniti retailer.  It was not until mid-September 2014, that the InTouch App became available in the United States.  Further, Defendant did not begin notifying Q50 owners and lessees that a software update was available and could be installed by authorized Infiniti retailers until the end of September 2014, if at all.  However, the software update leaves the InTouch system incomplete and continues to not provide the features promised in the promotional materials.

**ANSWER:**      Nissan admits that in order to access the at-issue apps and functions via InTouch, customers needed to download the Infiniti InTouch App ("InTouch App") onto a compatible smartphone and to obtain a software update from an Infiniti dealership. Nissan admits that the InTouch App became available in the United States in September 2014 and that it began notifying Q50 owners and lessees of the InTouch App's availability at that time.  Nissan admits that Pandora and iHeartRadio are not currently accessible via InTouch.  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

5.      Without the Advertised Apps/Functions, the Q50s purchased and leased by Plaintiffs and the other Class members did not and continues to not perform as advertised, as promised, and as warranted.  Consequently, Plaintiffs and the other Class members received a car worth less than as represented and less than what they paid for when purchasing and leasing their Q50.

**ANSWER**:    To  the  extent  the  allegations  in  this  paragraph  state  legal conclusions, an answer is neither appropriate nor required.   Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

## JURISDICTION AND VENUE

6.    The Court has jurisdiction over Plaintiffs' claims   pursuant to 28 U.S.C. § 1332(d), because this matter was brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from Defendant, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

**ANSWER:**    Subject  to  the  exceptions  noted  in  this  answer  to  paragraph  6, Nissan admits that this Court has jurisdiction over Plaintiffs' Complaint.  Nissan admits that Plaintiffs' Complaint purports to be a class action complaint but denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

7.    Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within and Defendant resides within the Central District of California.

**ANSWER:**    Defendant admits that venue is proper in this district.

## PARTIES

8.    Plaintiff Joshua Rafofsky is a citizen of California and resides in this district. He leased a Q50 in December 2013 from Infiniti of Glendale and repeatedly attempted to have the subject defect repaired by Defendant's authorized dealers in this district.

**ANSWER:**    Nissan admits that service records for the 2014 Q50 with a VIN ending in -1399 list Joshua Rafofsky as its lessee effective September 21, 2013.  Nissan admits that those service records indicate that Mr. Rafofsky leased the Q50 on September 21, 2013 from Glendale Infiniti.  Nissan admits that those records indicate that the Q50

received updates to its InTouch system and that a replacement Display Control Unit ("DCU") was ordered on or around December 15, 2014.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

9.      Plaintiff Joshua Iron Wing is a citizen of California and resides in this district.  He leased his Q50 in Nevada in November 2013 and has repeatedly attempted to have the subject defect repaired in this district by one of Defendant's authorized dealers.

**ANSWER:**      Nissan admits that service records for the 2014 Q50 with a VIN ending in -7141 list Joshua Iron Wing as its lessee effective November 5, 2013.  Nissan admits that those service records indicate that the Q50 received updates to its InTouch system and that a replacement Display Control Unit ("DCU") was ordered on or around July 29, 2014.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

10.      Defendant Nissan North America, Inc. is a California corporation and its headquarters are located in Franklin, Tennessee.  Defendant is the North American subsidiary of Nissan Motor Co.  Infiniti is a division of Defendant selling luxury vehicles within the United States and California.  Defendant designed, manufactured, marketed, distributed, leased, and sold, through its authorized dealers and distributors, the Q50 in the United States to Plaintiffs and the other Class members.

**ANSWER:**      Nissan admits that it is a California corporation headquartered in Franklin, Tennessee.  Nissan admits that it is a North American subsidiary of Nissan Motor Corporation, Limited.  Nissan admits that Infiniti is a division of Nissan and that it sells vehicles to authorized dealerships, which sell and lease Infiniti vehicles, including the 2014 Q50, within the United States and California.  Nissan admits that it marketed and distributed the 2014 Q50 in the United States.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

# FACTUAL BACKGROUND

*The Q50 and the InTouch System*

11.     The Q50 is a luxury sedan that debuted in the United States in August 2013. Since then, it has become Infiniti's best-selling vehicle in the United States.  More than 40,000 Q50s have been sold in the United States since its introduction.

**ANSWER:**     Nissan admits that it began selling the Q50 in the United States in August 2013 and that more than 40,000 Q50s have been sold since then.  Nissan admits that from August 2013 through March 2015 the Q50 was Infiniti's best-selling vehicle in the United States.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

12.     All Q50's are equipped with InTouch.  With the introduction of the 2014 model Q50 in August 2013, Defendant sought to stake Infiniti's claim as a leader of in-car technology.  The advertised abilities of InTouch to access the Advertised Apps/Functions were a key aspect of Defendant's marketing strategy to emphasize the technological superiority of the Q50.

**ANSWER:**     Nissan admits that InTouch is a standard feature on all 2014 Q50s. Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

13.     Through written advertisements, press releases, public statements, vehicle inserts, and other materials, Defendant represented that Q50s offered access to the Advertised Apps/Functions.  Defendant also portrayed Q50s' purported ability to access the Advertised Apps/Functions through visual displays, including pictures placed in advertisements and other promotional materials depicting the console of Q50s with Advertised Apps/Functions.   The message of these advertisements and promotional materials was that owners and lessees of Q50s are able to access the Advertised Apps/Functions through InTouch.

1   **ANSWER:**   Nissan admits that at certain times it made use of various materials

2  to inform potential customers of the InTouch system and that at certain times some of

3  those materials indicated that Facebook, Google Online Search, iHeartRadio, and Pandora

4  would later become accessible via InTouch and that the email and calendar functions

5  would later become accessible via InTouch.   Nissan denies any and all remaining

6  allegations of this paragraph to which an answer is required.

7   14.   When the Q50 was introduced at the North American International Auto

8  Show in January 2013, Infiniti's former President, Johan de Nysschen, boasted, "We have

9  new technologies that embrace the way people live today – seamless connectivity and

10  personalization everywhere they go, including while in their car, with an optimized

11  human-machine interface for ease of use."[2]  He was referring to InTouch.

12   [2] [Citation footnote omitted.]

13   **ANSWER:**   Nissan admits that a January 14, 2013 Infiniti press release

14  attributes the following remark to Johan de Nysschen: "We have new technologies that

15  embrace the way people live today – seamless connectivity and personalization

16  everywhere they go, including while in their *cars*, with an optimized human-machine

17  interface for ease of use" (emphasis added to indicate correction).  Nissan denies any and

18  all remaining allegations of this paragraph to which an answer is required.

19   15.   De Nysschen also boasted that the Q50 is the first Infiniti to "completely

20  crystallize our future design, performance, and technology direction."   InTouch was

21  touted as a system that "provides integration of smartphone apps in a way that is safe and

22  easy to use while driving." In summarizing the technology offered in the Q50, de

23  Nysschen stated, "Some day, all cars will use this technology; but today, you can only get

24  it on an Infiniti."[3]

25   [3] [Citation footnote omitted.]

26   **ANSWER:**   Nissan admits that Johan de Nysschen said that the Q50 was the

27  first Infiniti to "completely crystallize our future design, performance, and technology

28

direction."  Nissan admits that de Nysschen said that the Q50 "provides integration of smartphone apps in a way that is safe and easy to use while driving," and that, after describing the Q50's steering system, de Nysschen said, "Someday, all  cars will use this technology, but today you can only get it on an Infiniti."  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

16.    For the period of time between September 5, 2013, and December 10, 2013, portions of the InTouch webpage at infinitiusa.com/intouch appeared as follows:



**ANSWER:**    Nissan admits that, subject to minor edits and updates, the image and text reproduced in paragraph 16 appeared during the indicated time on the indicated webpage.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

17.    The writing above the depiction of the Q50 says: "Infiniti InTouch: Spend your day moving ahead instead of catching up.  Infiniti InTouch™ offers the latest technologies to bring your world with you on your devices, your schedule, your terms. It's not just advanced infotainment, it's advanced luxury that aspires to one thing alone– you."

**ANSWER:**     Nissan denies that paragraph 17 quotes the indicated text in its entirety because the full text also includes an asterisk in brackets ("[*]") that serves as a footnote call for additional text not quoted in paragraph 17.  As regards the text that paragraph 17 does quote, Nissan admits that the quotation accurately reproduces the text in the indicated image.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

18.     Below the depiction of the Q50 are the following statements: "Explore:  Learn how Infiniti InTouch Apps™, Infiniti Connection™, and SiriusXM can keep you connected on the go"; and "Support:  Discover the answer to frequently asked questions, get helpful resources and learn how to contact us."  Underneath these statements is the following:  "INFINITI INTOUCH SYSTEM:  Update – Expected Fall 2013 Availability."

**ANSWER:**     Nissan denies that paragraph 18 quotes the indicated text in its entirety because the full text also includes an asterisk in brackets after the phrase "Update – Expected Fall 2013 Availability" ("[*]") that serves as a footnote call for additional text that paragraph 18 does not quote.  As regards the text that paragraph 18 does quote, Nissan admits that the quotation accurately reproduces the text in the indicated image.

19.     Scrolling down revealed the followed image:

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

NISSAN NORTH AMERICA, INC.'S ANSWER TO PLAINTIFFS' CLASS ACTION COMPLAINT
CASE NO.  2:15-CV-01848 AB (MANX)

## InTouch Smartphone Apps
$19.99 per year after trial [*]

 **Facebook**
Stay in touch with friends and family while you're on the road.

 **iHeartRadio**
Stream more than 1,500 live radio stations with this free digital internet radio service.

 **Coming Soon**
Additional apps will be available soon. Availability will be announced periodically.

 **Coming Soon**
Additional apps will be available soon. Availability will be announced periodically.

 **Coming Soon**
Additional apps will be available soon. Availability will be announced periodically.

 **Online Search Powered by Google™**
Quickly find points of interest – like ATMs, restaurants and shops – no matter where you go.

 **Pandora**
Listen to free, personalized radio that only plays the music you love.

 **Coming Soon**
Additional apps will be available soon. Availability will be announced periodically.

 **Coming Soon**
Additional apps will be available soon. Availability will be announced periodically.

 **Coming Soon**
Additional apps will be available soon. Availability will be announced periodically.

## Infiniti Vehicle Apps
Built into your vehicle

 **Driving Performance**
Monitor your vehicle performance visually through graphs and charts.

 **Clock**
Select a clock screen from a variety of styles with rich interface.

 **Compass**
Select a compass to match your style.

 **Maintenance Note**
Set custom maintenance reminders for a variety of vehicle items.

 **Email - Coming Soon**
Connect your web-based email service and have your messages read to you via TTS.

 **Calendar - Coming Soon**
Synchronize your personal calendar so you never miss an appointment.

**ANSWER:**   Nissan admits that the image and text reproduced in paragraph 19 appeared on the indicated webpage during the period indicated in paragraph 16.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

20.    The webpage displayed trademarks or icons of Google, Facebook, Pandora, iHeartRadio, the InTouch App, along with other vehicle apps.  The page contained the following quote:

Infiniti InTouch apps (available this fall) give you a world of connection every time you get in your vehicle.

Elsewhere it claimed that:

[t]he apps that are essential to your digital life are now available inside your vehicle.  Infiniti's revolutionary dual-touchscreen infotainment system gives you everything from Facebook updates to the music you love.

**ANSWER:**   Nissan admits that during the period indicated in paragraph 16 the InTouch webpage displayed icons for Google, Facebook, Pandora, and iHeartRadio as well as icons for certain vehicle apps.  Nissan admits that the phrase "Infiniti InTouch

apps (available this fall) give you a world of connection every time you get in your vehicle" appeared on the website during that time.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

21.    Defendant also provided an interactive sample of the various features provided by the InTouch system at  24simulator.com/infiniti/itgen5/.  This website allows users to access the various menus and submenus of the InTouch system, to tinker around, and see how the system works in the Q50.  The webpage includes, among others, Google online search and Facebook, as well as icons for calendar and email.  When these icons are clicked, numerous submenus appear that illustrate the capabilities of these apps.  For example, the Facebook icon opens to submenus indicating that the user can check the newsfeed, update his or her status, view events, and access other features offered by the Facebook mobile app using the touchscreens of the InTouch system.  This webpage represents and affirms the fact that the Google search, Facebook, email, and calendar apps are available with the InTouch system and can be synched with the user's smartphone.

**ANSWER**:     Nissan admits that it offers and has offered a simulator at 24simulator.com/infiniti/itgen5 and that as of September 27, 2015 the simulator allowed users to access certain InTouch menus and submenus in order to demonstrate some of the system's capabilities.  Nissan admits that as of September 27, 2015 the simulator displayed the icons for Facebook, Google Online Search, Calendar, and Email and that submenus appeared when the user clicked on those buttons.  Nissan admits that as of September 27, 2015 those submenus included Events and Check-In.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

22.    Contrary to Defendant's representations, the InTouch App was not available in the U.S. for download until mid-September 2014, and the software upgrade required to access the Advertised Apps/Functions (excluding Pandora), to access and have emails read aloud, and to access a calendar, was not available until, at the earliest, late-September 2014, if at all.  As of March 12, 2015, owners and lessees could not access the Pandora

app through InTouch.

**ANSWER:** Nissan admits that the InTouch App became available for download in the United States in September 2014. Nissan admits that a September 2014 software update made available Facebook, Google Online Search, and the email and calendar functions. Nissan admits that as of March 12, 2015 owners and lessees could not access the Pandora app through InTouch. Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

23. From the time of taking delivery, whether by lease or purchase, of their Q50s, until (at the earliest) late-September 2014, Plaintiffs and the other Class members were unable to access Facebook, Pandora, iHeartRadio, and Online Google Search, could not access email and have their emails read to them, and could not access their calendars through InTouch.

**ANSWER:** Nissan admits that Facebook, Pandora, iHeartRadio, Google Online Search, and the email and calendar functions were not accessible via InTouch prior to September 2014. Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

24. As a result, they have not been able to enjoy the level of connectivity and integration described and promised in Defendant's statements, writings, and advertising.

**ANSWER:** To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required. Nissan admits that Facebook, Pandora, iHeartRadio, Google Online Search, and the email and calendar functions were not accessible via InTouch prior to September 2014 and that Pandora and iHeartRadio are not currently available. Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

25. Defendant represented that InTouch Apps, including access to the Advertised Apps/Functions through InTouch, was available in the fall of 2013.

**ANSWER:** Nissan admits that it indicated that the ability to access Facebook,

Pandora, iHeartRadio, and Google Online Search via InTouch was expected for fall 2013. Nissan admits that it indicated that the email and calendar functions had an expected availability of fall 2013. Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

26. When it became apparent that these features were not available in the fall of 2013, Defendant continued to assure Q50 owners and prospective owners that the features would be available imminently.

**ANSWER:**    Nissan admits that after fall 2013 it continued to inform customers and prospective customers that it was working to make Facebook, Pandora, iHeartRadio, Google Online Search, and the email and calendar functions available. Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

27. Because of Defendant's emphasis on the Q50s' technological capabilities, customers have been understandably vocal and upset with InTouch's failures. The following is a collection of some of the comments posted on various forums and review websites:

a. One reviewer said:

We were promised this app in Fall 2013, then December 2013, then they stopped talking about it altogether. Now in September 2014 it is released and it is completely useless . . . . [N]one of the apps work. Ridiculous experience on the Q50.[4]

b. Another stated:

I don't even care anymore. Infiniti has lost my business. At least for buying new model cars."[5]

c. On November 26, 2013 and in response to rumors that InTouch would be fully available in February, one Q50 lessee said:

The update is coming in February? So I'm going to drive this car for 1/6 of the lease term without the software I bought the car for in the first place?[6]

d.    Q50SFlorida said on July 9, 2014:

I have a brand new, 2 day old Q50S 2014, I was sold on the idea of the apps, but I guess they don't really work.  I had Facebook and Google search before I connected to the Intouch app, once connected these disappeared.  I was able to download the email application but now I can't connect, it says "can't connect to the server." I contacted Infiniti and they said "they are working on the problem" so I guess I'll wait, even though I think the problem has been going on for a year and no answer.[7]

e.    One reviewer described her experience with Defendant's customer service:

Have had this vehicle for 6 months and continue to have issues with the intouch system.  Have brought it back to the dealer twice and I am now convinced that they have no clue as what to do to resolve the issues.  Called Infiniti consumer hot line and that was a complete joke.  If the intouch worked properly it would be a great car, but it doesn't![8]

f.    On January 2, 2014, a frustrated reviewer said:

This is getting ridiculous, apps like Pandora have been on dozens of cars for almost two years, how is it that Infiniti releases a car that is supposed to become known for its technology and 5 months later we still don't have apps that corolla owners had a year ago?[9]

g.    On January 20, 2014, a reviewer said:

[The calendar] and the advertised email functionality were for me major factors in my decision to choose this vehicle over others. The fact that a third of a year later we are still waiting for this functionality, with no real information on when it will arrive, is very disappointing.[10]

h.  Another stated:

They advertised it, the salesperson bragged all about how cool it's going to be "Next Month when they are released," and it's not here. I'm not sure how big a part that played in my purchasing decision, but I know it meant something.[11]

i.  Another reviewer opined:

I want/need Calendar and Emails, I'm a System Manager and believe me, I get tons of email that I need to reply ASAP. That indeed was part of my decision to buy the car, so I can say that on that regard, I'm feeling [emoticon of a red face frowning].[12]

[4-12] [Citation footnotes omitted.]

**ANSWER:**   With certain exceptions, Nissan admits that the Complaint accurately quotes the indicated comments. Those exceptions are: comment (a) says "Sept" rather than "September"; comment (d) says "even thought I think" rather than "even though I think"; and comment (f) says "pretty ridiculous" rather than "ridiculous." Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

28.   Defendant has not publicly indicated a reason for the delay and general unavailability of the InTouch App and the Advertised Apps/Functions from August 2013, when the Q50 was introduced, until September 2014.

**ANSWER:**   Nissan admits that the Q50 was introduced in the United States in August 2013. Nissan admits that the InTouch App became available in the United States

in September 2014.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

29.     Defendant has refused to acknowledge it made mistakes or attempt to address its customers' concerns.  When a customer asked on Defendant's Facebook page when the Q50 software update would be ready to install, Defendant responded only: "For any future updates please visit the InTouch website . . . ."

**ANSWER**:     Nissan is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies them.

30.     Another customer indicated that Defendant gave him the following information:

We are sorry to hear about the experience you are having with your 2014 Infiniti Q50 and apologize for any inconvenience this may have caused you. Infiniti is still diligently working on Infiniti InTouch Apps™.  When the new feature will be available has not been determined.  Infiniti will, however, provide more information when it is available.  We apologize we are not currently able to provide more specific detail.  The patience of all our valued customers is greatly appreciated while we give the matter our full and utmost attention.[13]

[13]  [Citation footnote omitted.]

**ANSWER**:     Nissan admits that the indicated comment attributes a quotation to Nissan.  Nissan admits that the indicated comment is accurately quoted except that the final sentence  contains the phrase "this matter" rather than "the matter."  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

31.     On or about September 29, 2014, Defendant finally began notifying certain Class members that the InTouch App was available and that they could access the Advertised Apps/Functions (excluding Pandora) via InTouch after obtaining a software

1 | update from one of Defendant's authorized retailers.

2 | **ANSWER:**   Nissan admits that on or about September 24, 2014, it began
3 | notifying owners and lessees that there was an update available at authorized dealerships.
4 | Nissan admits that update made accessible or available via InTouch Facebook, Google
5 | Online Search, and the email and calendar functions.  Nissan admits that the September
6 | 2014 update did not make Pandora accessible via InTouch.  Nissan denies any and all
7 | remaining allegations of this paragraph to which an answer is required.

8 | 32.   During the period of time when the Advertised Apps/Functions were
9 | unavailable, Defendant did not explain the reason for the delay and unavailability of the
10 | InTouch App and has not offered any compensation to Plaintiffs and the other Class
11 | members for the substandard performance of their Q50s and the unavailability of the
12 | Advertised Apps/Functions.  When it became apparent that Defendant could not deliver
13 | the Q50 with Advertised Apps/Functions as advertised, Defendant assured customers that
14 | InTouch would perform in conformity with its representations at certain specified future
15 | dates.  Then, after repeatedly failing to deliver on these promises, Defendant simply
16 | informed Q50 owners that the InTouch App was not available, that it did not know when
17 | the InTouch App would be available, and asked Q50 owners to wait until an unspecified
18 | future date for it to offer the capabilities and functions that it promised Q50 owners could
19 | enjoy "today."

20 | **ANSWER**:   To the extent the allegations in this paragraph state legal
21 | conclusions, an answer is neither appropriate nor required.  Nissan admits that on certain
22 | occasions, until the September 2014 update, it informed some owners and lessees the at-
23 | issue apps and functions were not available.  Nissan is without knowledge or information
24 | sufficient to form a belief as to the truth of any and all remaining allegations of this
25 | paragraph that require an answer and therefore denies them.

26 | ***Plaintiff Joshua Rafofsky's Experience with the Q50 InTouch System***

27 | 33.   As Plaintiff Joshua Rafofsky's lease on his Infiniti G37 was expiring in late

28 |

2013, he began researching the Q50 and other competing cars and technology such as Apple's CarPlay, Google's Android Auto, as well as products from Parrot, Kenwood, and Pioneer.  As a technology consultant, Rafofsky was in the market for cars that offered premium technological features.

**ANSWER**:     Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all allegations of this paragraph that require an answer and therefore denies them.

34.    Defendant aggressively marketed the 2014 Q50, the InTouch system, and the Advertised Apps/Functions to Rafofsky.  Defendant assured him that InTouch was one of the best systems currently offered.  It further assured him that InTouch's "App Garage" would provide access to music apps and services, such as Pandora and iHeartRadio, with driver-friendly interfaces that improved the vehicle's safety.

**ANSWER**:     Nissan admits that it advertised the InTouch system to the general public.  Nissan admits that at certain times prior to September 21, 2013 its promotional materials indicated that Nissan expected to make Pandora and iHeartRadio accessible via InTouch at some point in fall 2013.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

35.    Defendant's assurances, affirmations of fact, and representations concerning the characteristics, quality, and performance capabilities of the InTouch system were in accord with a uniform directive to all authorized dealers by Defendant to emphasize the InTouch system and the Advertised Apps/Functions as a selling point.

**ANSWER**:     Nissan admits to making authorized dealers aware of the InTouch system and its planned features.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

36.    Rafofsky was also persuaded that the Q50 was a more state-of-the-art vehicle

because a connected smartphone could remain in the glove box and be accessed through the InTouch system.  This aspect of the system would be attractive to consumers in jurisdictions, such as this, where using smartphones while driving is generally prohibited by law.  Rafofsky placed a down payment on a 2014 Q50 in reliance on these representations.

**ANSWER**:     Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all allegations of this paragraph that require an answer and therefore denies them.

37.   Relying upon the representations of Defendant, Rafofsky leased a Q50 in December 2013.  The decision to lease a Q50 was influenced in significant part by Defendant's representations regarding the availability of the Advertised Apps/Functions.

**ANSWER**:     Nissan admits that service records for the 2014 Q50 with a VIN ending in -1399 indicate that Mr. Rafofsky leased a 2014 Q50 on September 21, 2013. Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

38.   At the time Rafofsky took possession of the Q50 and subsequent to his placing a down payment on the Q50, Rafofsky was told that the Advertised Apps/Functions aspect of the InTouch system was not quite ready, but that it would be released in a few weeks.  That was disappointing to Rafofsky because up until that point he had not been informed of any late availability or shortcomings of the system.

**ANSWER**:     Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all allegations of this paragraph that require an answer and therefore denies them.

39.   Shortly after leasing his car, Rafofsky complained to Defendant about the unavailability of the Advertised Apps/Functions and the sluggish, cumbersome overall performance of the InTouch system.  He was told that the problems were the result of

early release issues and that a bug fix was shortly forthcoming.

**ANSWER**:      Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all allegations of this paragraph that require an answer and therefore denies them.

40.    In or around the middle of 2014, Rafofsky brought in his Q50 for regular servicing and maintenance.  At that time, Rafofsky was informed of a "firmware" update to improve the InTouch system.   Rafofsky experienced no improvement in the performance of the InTouch system after receiving the update.  Moreover, the Advertised Apps/Functions were still missing.

**ANSWER**:      Nissan admits that the service history for a 2014 Q50 with a VIN ending in -1399 and listing Joshua Rafofsky as the lessee indicates that the vehicle received an InTouch software update in May 2014.  Nissan admits that Facebook, Google Online Search, Pandora, iHeartRadio, and the email and calendar functions were not available at that time.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

41.    In September of 2014, Rafofsky received a notice from Infiniti that an update was finally ready for installation.  He returned to an Infiniti Service station and dropped his car off for the upgrade.  The upgrade was unsuccessful, and Rafofsky was told that he needed a replacement computer.

**ANSWER**:      Nissan admits that Facebook, Google Online Search, and the email and calendar functions became available via InTouch in September 2014 and that it began notifying customers of their availability at that time.  Nissan admits that the service history for a 2014 Q50 with a VIN ending in -1399 and listing Joshua Rafofsky as the lessee indicates that the vehicle received an InTouch software update in December 2014. Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore

denies them.

42.     Rafofsky returned to the Infiniti Service station a week later to get the new computer installed.  Once the new computer was installed, Rafofsky discovered that the new upgrade made available only the Google search and Facebook apps.  The music apps, which he had hoped for, were still unavailable, contrary to Defendant's representations and Rafofsky's reasonable expectations.

**ANSWER**:     Nissan admits that a Techline file indicates that on or about December 16, 2014 an Infiniti dealership placed an order for a replacement Display Control Unit ("DCU") for the 2014 Q50 with a VIN ending in  -1399.  Nissan admits that Techline file indicates that the supplier processed the order and scheduled shipment for December 16, 2014.  Nissan admits that the September 2014 update did not make Pandora or iHeartRadio available.   To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

***Plaintiff Joshua Iron Wing's Experience with the Q50 InTouch System***

43.     Plaintiff Joshua Iron Wing leased a model year 2014 Q50 on November 5, 2013, from Park Place Infiniti in Las Vegas, Nevada, and continues to lease his Q50.

**ANSWER**:     Nissan admits that the service history associated with the 2014 Q50 with a VIN ending in -7141 indicates that Joshua Iron Wing leased the vehicle on November 5, 2013 from Park Place Infiniti.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

44.     The capabilities of the InTouch System with respect to the Advertised Apps/Functions were a significant part of Iron Wing's decision to purchase a Q50 rather than one of its competitors.  Iron Wing is interested in new technologies, and the salesmen emphasized heavily the features of the InTouch Apps and system.  Prior to the lease, Iron

1  Wing was made familiar with the InTouch system and the touted capabilities which it has

2  yet either to be capable of performing or actually performing, and relied on same, through

3  Infiniti advertisements, such as the Infiniti website, and representations made by the sales

4  staff at the Infiniti dealership from which the vehicle was leased.  These representations

5  were made in accordance with Infiniti directives, policies, and knowledge regarding the

6  sale of Q50s.

7      **ANSWER**:      Nissan denies that the InTouch system was and is incapable of

8  performing any of its many functions, including many of the functions that Nissan

9  advertised.  Nissan is without knowledge or information sufficient to form a belief as to

10 the truth of any and all remaining allegations of this paragraph that require an answer and

11 therefore denies them.

12     45.    Prior to leasing his Q50, Iron Wing was told by sales staff that he would be

13 able to use his personal email and calendar, Google, Pandora, and Facebook on the

14 InTouch system.  Although he was informed that all these capabilities were not presently

15 available at the time of leasing, the sales staff assured him that they would be available

16 within a few weeks – a month at most.

17     **ANSWER**:      Nissan is without knowledge or information sufficient to form a

18 belief as to the truth of any and all remaining allegations of this paragraph that require an

19 answer and therefore denies them.

20     46.    Iron Wing leased the Q50 based in material part on Defendant's

21 representations that the car's InTouch system would be able to access the Advertised

22 Apps/Functions.

23     **ANSWER**:      To the extent the allegations in this paragraph state legal

24 conclusions, an answer is neither appropriate nor required.  Nissan is without knowledge

25 or information sufficient to form a belief as to the truth of any and all remaining

26 allegations of this paragraph that require an answer and therefore denies them.

27     47.    From the time Iron Wing took delivery of his Q50 until about mid-November

28

2014, however, he has been unable to access any of the Advertised Apps/Functions via InTouch because the Advertised Apps/Functions had not been made available by Defendant.

**ANSWER**:      Nissan admits that Facebook, Google Online Search, and the email and calendar functions became available in September 2014.  Nissan denies that it did not make those apps and functions available until mid-November 2014.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

48.   Iron Wing inquired about the status of the Advertised Apps/Functions more than ten times over the intervening one-year period and was told repeatedly by Defendant to wait just a little longer for the Advertised Apps/Functions to become available.  He also experienced issues and "bugs" in the InTouch system, such as screen blackout, volume controls not functioning, and error messages appearing over the backup camera while in use interfering with the view.

**ANSWER**:      Nissan admits that its Consumer Affairs files indicate that Consumer Affairs representatives spoke with Mr. Iron Wing by phone, online chat, or email regarding InTouch on at least six occasions between December 14, 2013 and November 25, 2014.  Nissan admits that its Techline files indicate that on or about July 28, 2014 a technician at AutoNation Infiniti South Bay confirmed that the audio displays on Mr. Iron Wing's Q50 were black on start-up.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

49.   Iron Wing took his Q50 in for service in Redondo Beach, California to address these issues and had his computer replaced.  The problems persisted.

**ANSWER**:      Nissan admits that the Techline file for Mr. Iron Wing's Q50 indicate that on July 28, 2014 AutoNation Infiniti South Bay sent an email requesting a replacement Display Control Unit ("DCU") and that the supplier confirmed processing

that order on July 29, 2014.  Nissan admits that service records for Mr. Iron Wing's Q50 indicate that the screen was replaced on or about July 31, 2014 at AutoNation Infiniti South Bay.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

50.    Sometime in mid-November 2014, Iron Wing was informed of a software update while taking his car in for an oil change.  Even with this update, his e-mail does not function, there are no music apps, and the system still is plagued by problems.  As a result, Iron Wing overpaid for his Q50 because his vehicle did not possess the qualities and attributes Defendant represented it had and would have within a specified period of time.

**ANSWER:**    Nissan admits that a software update that became available in September 2014 made accessible Facebook, Google Online Search, and the email and calendar functions.  Nissan admits that the service history for Mr. Iron Wing's Q50 indicates that on or about November 15, 2014 Mr. Iron Wing's Q50 received a software update.  Nissan admits that the service history for Mr. Iron Wing's Q50 indicates that on or about December 3, 2014 his Q50 received a software update.  Nissan admits that Pandora and iHeartRadio are not currently accessible via InTouch.  Nissan admits that its Consumer Affairs records indicate that on November 21, 2014 Mr. Iron Wing said that he could not access the InTouch server with his Hotmail account and that a Consumer Affairs agent advised him to contact his email provider to get the correct IMAP/POP3 information.  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

## CLASS ALLEGATIONS

51.    This action is brought as a class action pursuant to Fed. R. Civ. P. 23(a) and

(b)(3), on behalf of a Class defined as follows:

> All persons and entities that purchased or leased a 2014 Infiniti Q50 for end use and not for resale.

Excluded from the Class are: (i) Defendant and its officers and directors, agents, affiliates, subsidiaries, authorized distributors and dealers, (ii) all Class Members that timely and validly request exclusion from the Class, and (iii) the Judge presiding over this action.

**ANSWER**:   Nissan admits that Plaintiffs' Complaint purports to be a class action on behalf of the supposed "Class" as defined in paragraph 51.  Nissan denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint and therefore denies any and all allegations in this paragraph to which an answer is required.

52.    Plaintiffs also seek certification under Fed. R. Civ. P. 23(a) and (b)(3) of the following proposed state classes ("State Classes"):

> All persons and entities that purchased or leased a 2014 Infiniti Q50 for end us and not for resale in the State of California.

> All persons and entities that purchased or leased a  2014 Infiniti Q50 for end use and not for resale in the State of Nevada.

Excluded from the State Classes are: (i) Defendant and its officers and directors, agents, affiliates, subsidiaries, authorized distributors and dealers, (ii) all State Class Members that timely and validly request exclusion from the State Class, and (iii) the Judge presiding over this action.

**ANSWER**:   Nissan admits that Plaintiffs' Complaint purports to be a class action on behalf of the supposed "State Classes" as defined in paragraph 52.  Nissan denies that any class is proper or that Plaintiffs or the supposed "State Classes" are entitled to any relief on the claims in the Complaint and therefore denies any and all allegations in this paragraph to which an answer is required.

53.     Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

**ANSWER**:     To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint and therefore denies any and all allegations in this paragraph to which an answer is required.

54.     The members of the Class are so numerous that joinder of the Class members would be impracticable.  On information and belief, Class members number in the thousands.  The precise number of Class members and their addresses are presently unknown to Plaintiffs, but may be ascertained from Defendant's records.

**ANSWER**:     Nissan admits that the Complaint purports to be a class action complaint on behalf of a class numbering in the thousands.  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint.  Nissan admits that it has estimates for the number of 2014 Q50s sold in the United States.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

55.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Such common questions of law or fact include, *inter alia*:

    A.     whether Defendant engaged in the conduct alleged herein;

    B.     whether Defendant misrepresented that purchasers and lessees of model year 2014 Q50s would be able to access the Advertised Apps

using InTouch, access emails and have emails read aloud through InTouch, and access a calendar through InTouch;

C.  whether Defendant's representations regarding the functionality of Q50s' InTouch systems were likely to mislead a reasonable consumer;

D.  whether Defendant breached express warranties with Plaintiffs and the other Class members when it produced, distributed, and sold Q50s that lacked the capabilities represented;

E.  whether Defendant violated the Magnuson-Moss Warranty Act;

F.  whether Defendant violated California's Consumers Legal Remedies Act;

G.  whether Defendant's conduct violated the Unfair Competition Law;

H.  whether Plaintiffs' and the other Class members' Q50s were worth less than as represented as a result of the conduct alleged herein;

I.  whether Plaintiffs and the other Class members have been damaged and, if so, the extent of such damages; and

J.  whether Plaintiffs and the other Class members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

**ANSWER**:    To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint and therefore denies any and all allegations in this paragraph to which an answer is required.

56.  Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other Class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison, in both

quality and quantity, to the numerous common questions that dominate this action.

**ANSWER**:     To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint and therefore denies any and all allegations in this paragraph to which an answer is required.

57.    Plaintiffs' claims are typical of the claims of the other Class members because, among other things, Plaintiffs and the other Class members were injured through the substantially uniform misconduct described above.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class members, and no defense is available to Defendant that is unique to Plaintiffs.

**ANSWER**:     To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint and therefore denies any and all allegations in this paragraph to which an answer is required.

58.    Plaintiffs are adequate Class representatives because they will fairly represent the interests of the Class.  Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class they seek to represent, and have the resources to do so.  Neither Plaintiffs nor their counsel have any interest adverse or antagonistic to those of the Class.

**ANSWER**:     To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that

1 require an answer and therefore denies them.

2      59.    A class action is superior to any other available means for the fair and
3 efficient adjudication of this controversy, and no unusual difficulties are likely to be
4 encountered in the management of this class action.  The damages or other detriment
5 suffered by Plaintiffs and the other Class members are relatively small compared to the
6 burden and expense that would be required to individually litigate their claims against
7 Defendant, so it would be impracticable for Class members to individually seek redress
8 for Defendant's wrongful conduct.  Even if Class members could afford individual
9 litigation, the court system should not be required to undertake such an unnecessary
10 burden.  Individualized litigation would also create a potential for inconsistent or
11 contradictory judgments, and increase the delay and expense to all parties and the court
12 system.  By contrast, the class action device presents far fewer management difficulties
13 and provides the benefits of a single adjudication, economies of scale, and comprehensive
14 supervision by a single court.

15      **ANSWER**:   To the extent the allegations in this paragraph state legal
16 conclusions, an answer is neither appropriate nor required.  Nissan denies that any class is
17 proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on
18 the claims in the Complaint.  Nissan is without knowledge or information sufficient to
19 form a belief as to the truth of any and all remaining allegations of this paragraph that
20 require an answer and therefore denies them.

21 **CAUSES OF ACTION**

22 **COUNT I**

23 **Violation of Magnuson-Moss Warranty Act**

24 **(National Class or, in the Alternative, Each State Class)**

25      Plaintiffs voluntarily dismissed Count I of their Complaint.  (Sept. 22, 2015, ECF
26 No. 39.)  Nissan therefore does not answer Count I and omits from its Answer the
27 corresponding paragraphs of the Complaint (¶¶ 60 – 71).

28

**COUNT II**

**Breach of Express Warranty**

**(National Class or, in the Alternative, the California Class)**

72.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

**ANSWER**:    Nissan incorporates by reference its answers to the allegations in the preceding paragraphs as if fully set forth herein.

73.    Plaintiffs and the other Class members formed a contract with Defendant at the time they purchased or leased their Q50s.  The terms of the contract include the promises and affirmations of fact and express warranties made by Defendant.

**ANSWER**:    To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies entering into any contract regarding the sale or lease of a 2014 Q50 with any customer except the contract created by its 2014 New Vehicle Limited Warranty.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

74.    Plaintiffs' and the other Class members' Q50s did not perform in conformity with Defendant's affirmations of fact and promises.  The InTouch App, which is required to enable connectivity between one's smartphone and the InTouch system, has not been made available until mid-September 2014.  And, it was not until late-September 2014, if at all, that Defendant began making available at authorized Infiniti retailers the software update required to access the Advertised Apps (excluding Pandora), email, and the calendar through InTouch.  As of March 12, 2015, owners and lessees of Q50s could not access the Pandora app through InTouch.

**ANSWER**:    Nissan admits that the InTouch App became available in September 2014.  Nissan admits that Facebook, Google Online Search, and the email and calendar functions became accessible via InTouch in September 2014, when Nissan began making the necessary software update available to customers at authorized dealerships.  Nissan

admits that as of March 12, 2015 Pandora was not accessible through InTouch. To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required. Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

75. All conditions precedent have occurred or been performed. Defendant has actual knowledge that it breached express warranties with Plaintiffs and the other Class members related to the Q50.

**ANSWER:** To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required. Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

76. Defendant breached the terms of the express warranties with Plaintiffs and the other Class members by not providing Q50s with the capabilities and functionality as advertised.

**ANSWER:** To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required. Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

77. As the foreseeable and actual result of Defendant's breach of express warranty, Plaintiffs and the other Class members were damaged in an amount that is the difference between the value of Q50s if they had possessed the qualities and attributes represented and the value of the Q50s Plaintiffs and the other Class members actually received.

**ANSWER:** To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required. Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

\\

\\

\\

NISSAN NORTH AMERICA, INC.'S ANSWER TO PLAINTIFFS' CLASS ACTION COMPLAINT
CASE NO. 2:15-CV-01848 AB (MANX)

**COUNT III**

**Breach of Contract under California Law**

**(National Class or, in the Alternative, the California Class)**

78.    Plaintiffs  reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

**ANSWER**:    Nissan incorporates by reference its answers to the allegations in the preceding paragraphs as if fully set forth herein.

79.    Plaintiffs and the other Class members individually formed contracts with Defendant for the purchase of a Q50 equipped with an InTouch system.

**ANSWER**:    To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies entering into any contract regarding the sale or lease of a 2014 Q50 with any customer except the contract created by its 2014 New Vehicle Limited Warranty.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

80.    The contract included terms regarding delivery of an InTouch system capable of running the Advertised Apps/Functions on a certain date.  Plaintiffs and the other Class members bargained for this term in the sales contract.

**ANSWER**:    To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies entering into any contract regarding the sale or lease of a 2014 Q50 with any customer except the contract created by its 2014 New Vehicle Limited Warranty.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

81.    Defendant breached each of these contracts when it failed to deliver an InTouch system capable of running the Advertised Apps/functions on that certain date.  Although Defendant eventually delivered portions  of the Advertised Apps/Functions, the delivery was nearly a year overdue and did not meet specifications.  Plaintiffs and the other Class members have been without the Advertised Apps/Functions from the time

they took delivery to about late- September 2014 at the earliest.   Certain features, including but not limited to certain music apps and e-mail capabilities are still unavailable or substandard.

**ANSWER**:      Nissan admits that the InTouch App became available in September 2014.  Nissan admits that Facebook, Google Online Search, and the email and calendar functions became accessible via InTouch in September 2014.  Nissan admits that Pandora and iHeartRadio are not currently accessible via InTouch.  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

82.    Plaintiffs and the other Class members were deprived of the benefit of the bargain as a result, overpaid for their Q50s, and are entitled to actual damages they sustained as a result of Defendant's breach, consequential, and incidental losses.

**ANSWER**:      To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

## COUNT IV

### Violation of the California Consumers Legal Remedies Act
### (National Class or, in the Alternative, the California Class)

83.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

**ANSWER**:      Nissan incorporates by reference its answers to the allegations in the preceding paragraphs as if fully set forth herein.

84.    Defendant's conduct, as described herein, in misrepresenting Q50s' technological features and emphasizing Q50s' InTouch system as capable of performing certain tasks it was unable to perform, while omitting the fact that InTouch could not access the Advertised Apps/Functions, violates the California Consumers Legal Remedies

Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*. Specifically, Defendant violated the CLRA through advertisements, promotional material, packaging materials, such as vehicle inserts, and statements by salespersons when it portrayed the InTouch system as capable of interfacing with several popular mobile phone apps, by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions that were intended to result in, and did result in, the sale of the product:

    a.     representing that the Q50 has characteristics, uses and benefits which it does not have;

    b.     representing that the Q50 is of a particular standard, quality, or grade, when it is not;

    c.     advertising the Q50 with intent not to sell it as advertised; and

    d.     representing that the Q50 has been supplied in accordance with previous representations when it has not.

**ANSWER**:  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

85.    Defendant violated the Act by misrepresenting and failing to disclose material facts as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts they were obligated to disclose.

**ANSWER**:  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

86.    Pursuant to California Civil Code § 1782(d), Plaintiffs, individually and on behalf of the other members of the Class, seek a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

**ANSWER**:  Nissan admits that Plaintiffs individually and on behalf of a purported

"Class" seek a Court order as described in paragraph 86.  Nissan denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint and therefore denies any and all allegations in this paragraph to which an answer is required.

87.   Pursuant to § 1782 of the Act, Plaintiffs notified Defendant in writing by certified mail of the particular violations of § 1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.  A copy of the letter is attached hereto as Exhibit A.

**ANSWER**:    Nissan admits that Plaintiffs attached as Exhibit A to their Complaint a letter addressed to "Mr. Josè Munoz, Chairman" at an address in Franklin, TN.  Nissan admits that the referenced letter demanded that Nissan rectify certain alleged problems and initiate a "corrective advertising campaign to re-educate consumers regarding the truth of the products at issue."  (Compl., Ex. A at 2.)  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

88.   If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the Act, Plaintiffs will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

**ANSWER**:  Nissan denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint.  Nissan is without knowledge or information sufficient to form a belief as to the truth of any and all remaining allegations of this paragraph that require an answer and therefore denies them.

89.   Defendant's conduct is fraudulent, wanton, and malicious.

**ANSWER**:    To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all allegations of this paragraph to which an answer is required.

90.     Pursuant to §1780(d) of the Act, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

**ANSWER**:     Nissan admits that Exhibit B to Plaintiffs' Complaint is titled "Affidavit of Timothy G. Blood Pursuant to California Civil Code §1780(d)."   To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.

## COUNT V

### Violation of California's Unfair Competition Law

### (National Class or, in the Alternative, the California Class)

91.     Plaintiffs reallege and incorporate by reference the  preceding paragraphs as if fully set forth herein.

**ANSWER**:  Nissan incorporates by reference its answers to the allegations in the preceding paragraphs as if fully set forth herein.

92.     The Unfair Competition Law, Business & Professions Code § 17200, *et seq*. ("UCL"), and similar laws in other states, prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.  In the course of conducting business, Defendant committed unlawful business practices by, among other things, making the representations (which also constitutes advertising within the meaning of § 17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16) and Business & Professions Code §§ 17200, *et seq*., 17500, *et seq*., and the common law.  Plaintiffs, individually and on behalf of the other Class members, reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

**ANSWER**:     Nissan admits that the Unfair Competition Law, Business & Professions Code § 17200, *et seq.* ("UCL") prohibits unlawful, fraudulent, or unfair

business acts or practices as well as untrue or misleading advertising.  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

93.    In the course of conducting business, Defendant committed "unfair" business practices by, among other things, making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts regarding the Q50 in its advertising campaign, as alleged.  There is no societal benefit from false advertising – only harm.  Plaintiffs and the other Class members overpaid for the InTouch system that does not confer the benefits it promises.  While Plaintiffs and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and omissions.  As a result, Defendant's conduct is "unfair," as it offended an established public policy.   Further, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

**ANSWER**:  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

94.    Further, as set forth in this Complaint, Plaintiffs allege violations of consumer protection, unfair competition, and truth in advertising laws in California and other states, resulting in harm to consumers.  Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers.   This conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, *et seq*.  There were reasonably available alternatives to further Defendant's legitimate business interests,

other than the conduct described herein.

**ANSWER**:  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

95.     Business & Professions Code § 17200, *et seq*., also prohibits any "fraudulent business act or practice."  In the course of conducting business, Defendant committed "fraudulent business act[s] or practices" by, among other things, prominently making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts regarding the InTouch system in its advertising campaign.

**ANSWER**:  Nissan admits that the UCL prohibits fraudulent business acts or practices.  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

96.     Defendant's actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, *et seq*.

**ANSWER**:  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

97.     Plaintiffs have in fact been deceived as a result of their reliance on Defendant's material representations and omissions, which are described above.  Plaintiffs have suffered injury in fact and lost money as a result of purchasing the deceptively advertised Q50 by paying more than they should have and expending time, effort, and money to attempt to have the InTouch system repaired, when no repair was possible.

**ANSWER**:  To the extent the allegations in this paragraph state legal conclusions,

an answer is neither appropriate nor required.   Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

98.   Defendant knew, or should have known, that its material representations and omissions would be likely to deceive the consuming public and result in consumers purchasing the Q50 and, indeed, intended to deceive consumers.

**ANSWER**:  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.   Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

99.   As a result of the deception, Defendant has been able to reap unjust revenue and profit.

**ANSWER**:  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.   Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

100.  Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate.

**ANSWER**:  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.   Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

101.  Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, seek restitution from Defendant of all money obtained from Plaintiffs and the other members of the Class collected as a result of unfair competition, an injunction prohibiting Defendant from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

**ANSWER**:  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.   Nissan denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims

1  in the Complaint.  Nissan denies any and all remaining allegations of this paragraph to
2  which an answer is required.

3                                         **COUNT VI**

4            **Violation of the Nevada Deceptive Trade Practices Act (Nevada Class)**

5         102.  Plaintiffs reallege and incorporate by reference all  paragraphs as though
6  fully set forth herein.  For purposes of this Count, "Plaintiff" refers only to Joshua Iron
7  Wing.

8         **ANSWER**:  Nissan incorporates by reference its answers to the allegations in the
9  preceding paragraphs as if fully set forth herein.

10        103.  Nev. Rev. Stat. §598.0903, *et seq*., provides that the following types of
11  conduct constitute deceptive trade practices:

12        a.    knowingly making a false representation as to the characteristics, ingredients,
13  uses, benefits, alterations or quantities of goods or services for sale or lease or a false
14  representation as to the sponsorship, approval, status, affiliation or connection of a person
15  therewith;

16        b.    representing that goods or services for sale or lease are of a particular
17  standard, quality or grade, or that such goods are of a particular style or model, if he or
18  she knows or should know that they are of another standard, quality, grade, style, or
19  model;

20        c.    advertising goods or services with intent not to sell or lease them as
21  advertised;

22        d.    knowingly making any other false representation in a transaction;

23        e.    offering to sell or lease goods or services which the seller or lessor in truth
24  may not intend or desire to sell or lease, and refusing to show the goods advertised or
25  showing or demonstrating defective goods for sale or lease which are unusable or
26  impractical for the purposes set forth in the advertisement.

27        **ANSWER**:       Nissan admits that Plaintiffs have paraphrased certain provisions of

28

the Nevada Deceptive Trade Practices Act.  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

104.  Defendant engaged in conduct constituting deceptive trade practices as defined above.  Defendant knowingly and uniformly misrepresented the quality, capabilities, characteristics, and benefits of the InTouch system and the availability of the Advertised Apps/Functions  in advertisements and in sales pitches.  Defendant advertised the Q50 as equipped with an InTouch system that was capable of performing certain tasks which it was at the time unable to perform with the intent to induce sales transactions in reliance on those advertisements.  Then, Defendant assured Plaintiff and the other Nevada Class members that the non-existent advertised capabilities would be available on a specific future date.  Defendant made these representations knowing them to be false or consciously disregarding their accuracy or truth to induce Plaintiff and the other Nevada Class members to go forward with the transaction.  Defendant omitted the important and material facts regarding the existence of defects in the InTouch system, their nature, and the extent of the issues, and that the defect would result in the unavailability of the Advertised Apps/Functions until late- September 2014, at the earliest.

**ANSWER**:   To  the  extent  the  allegations  in  this  paragraph  state  legal conclusions, an answer is neither appropriate nor required.  Nissan denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

105.  Plaintiff and the other Nevada Class members reasonably relied on the false representations and omissions of material facts and were induced to purchase or lease the Q50 to their detriment.

**ANSWER**:   To  the  extent  the  allegations  in  this  paragraph  state  legal conclusions, an answer is neither appropriate nor required.  Nissan denies that any class is

proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

106.   Plaintiff and the other Nevada Class members were injured and suffered actual loss as a direct and foreseeable result of Defendant's deceptive trade practices. They overpaid for their Q50s because, until late-September 2014, at the earliest, they were unable to enjoy the Advertised Apps/Functions and the technological and safety features that they bargained for and expected.

**ANSWER**:      Nissan admits that Facebook, Google Online Search, and the email and calendar functions became accessible via InTouch in September 2014.  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies that any class is proper or that Plaintiffs or any supposed "Class" or "Classes" are entitled to any relief on the claims in the Complaint.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

## COUNT VII

### Breach of Express Warranty Under Nevada Law (Nevada Class)

107.   Plaintiffs reallege and incorporate by reference all  paragraphs as though fully set forth herein.  For purposes of this Count, "Plaintiff" refers only to Joshua Iron Wing.

**ANSWER**:      Nissan incorporates by reference its answers to the allegations in the preceding paragraphs as if fully set forth herein.

108.   Defendant was and continues to be a merchant of Q50s and other motor vehicles.

**ANSWER**:  Nissan admits to being an automobile manufacturer.  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

109. Defendant expressly warranted, through broadly disseminated advertising materials, online statements, and one-to-one communications with individual Nevada Class members, in writing and orally, that Q50s were and would be capable of running the Advertised Apps/Functions and possessing a premium in-vehicle computer offering specific technological and safety features, such as increased connectivity to one's smartphone and important popular mobile applications. These statements were affirmations of fact, were uniform and were made, caused to be made, or disseminated at the directive of Defendant.

**ANSWER**:    Nissan admits that at certain points in time some of its promotional materials related to the 2014 Q50 mentioned certain technological features, including the InTouch system and the apps (Facebook, Google Online Search, Pandora, and iHeartRadio) that were planned to become accessible via InTouch later as well as the email and calendar functions that were planned to become available or accessible later. To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.   Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

110. The statements regarding the capabilities, qualities, and characteristics of the InTouch system and the availability of the Advertised Apps/Functions formed part of the basis of the bargain between Defendant and Plaintiff and the other Nevada Class members.

**ANSWER**:    To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.   Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

111. Defendant breached these warranties when it delivered to Plaintiff and the other Nevada Class members Q50s that did not conform to the warranties, representations, and specifications.

**ANSWER**:    To the extent the allegations in this paragraph state legal

conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

112.   In addition, Defendant expressly warranted in writing, through the New Vehicle Limited Warranty, that it would undertake to repair or replace any materials or workmanship of any part supplied by Defendant.  Defendant has not repaired or replaced the defects in the Q50's InTouch system.

**ANSWER**:      Nissan admits that the New Vehicle Limited Warranty for the 2014 Q50 covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Infiniti vehicle supplied by Infiniti subject to certain exclusions.  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

113.   Defendant breached this warranty when it failed to repair or replace the defects that affected the InTouch system and caused the unavailability of the Advertised Apps/Functions until late-September 2014, at the earliest.  Defendant's prior efforts failed to cure all the problems affecting the materials and workmanship and they exist to this date.  Furthermore, the limited warranty failed of its essential purpose because Defendant has failed or refused to cure the defects within a reasonable time.

**ANSWER**:      Nissan admits that Facebook, Google Online Search, and the email and calendar functions became accessible via InTouch in September 2014.  To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

114.   Defendant knew when it made the warranties and sold the vehicles that the Q50s did not conform to the warranties and were defective.  Nevertheless, Defendant misrepresented, failed to correct other prior misrepresentations it had a duty to correct, and omitted material facts regarding the InTouch system.  As a result, Plaintiff and the

other Nevada Class members were induced to purchase or lease the vehicles under false and fraudulent pretenses.

**ANSWER**:   To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

115.   All conditions precedent have occurred or been performed.  Defendant was provided notice of these issues by the many consumer complaints it has received or that have been publicized, including previous legal actions, arising from the InTouch system's defects and the unavailability of the Advertised Apps/Functions.

**ANSWER**:   To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

116.   Plaintiff and the other Nevada Class members overpaid for their Q50s and sustained injury as a result of Defendant's breach of express warranties.

**ANSWER**:   To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

## COUNT VIII

## Breach of Contract Under Nevada Law

### (Nevada Class)

117.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.  For purposes of this Count, "Plaintiff" refers only to Joshua Iron Wing.

**ANSWER**:   Nissan incorporates by reference its answers to the allegations in the preceding paragraphs as if fully set forth herein.

118.   Plaintiff and the other Nevada Class members individually formed contracts with Defendant for the purchase of a Q50 equipped with an InTouch system that

conformed to specifications and advertising representations.

**ANSWER**:   To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies entering into any contract regarding the sale or lease of a 2014 Q50 with any customer except the contract created by its 2014 New Vehicle Limited Warranty.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

119.   The contract included terms regarding delivery of an InTouch system capable of running the Advertised Apps/Functions on a certain date.  Plaintiff and the other Class members bargained for this term in the sales contract.

**ANSWER**:   To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies entering into any contract regarding the sale or lease of a 2014 Q50 with any customer except the contract created by its 2014 New Vehicle Limited Warranty.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

120.   Defendant breached each of these contracts when it failed to deliver an InTouch system capable of running the Advertised Apps/Functions on that date.

**ANSWER**:   To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

121.   Plaintiff and the other Nevada Class members were deprived of the benefit of the bargain as a result, overpaid for their Q50s, and are entitled to actual damages, consequential, and incidental losses they sustained as a result of Defendant's breach.

**ANSWER**:   To the extent the allegations in this paragraph state legal conclusions, an answer is neither appropriate nor required.  Nissan denies any and all remaining allegations of this paragraph to which an answer is required.

\\

\\

1

Dated:  October 6, 2015                    JENNER & BLOCK LLP

2

3                                      By:        /s/ Kenneth K. Lee
                                              Kenneth K. Lee
4
                                           *Counsel for Defendant*
5                                          *Nissan North America, Inc..*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NISSAN NORTH AMERICA, INC.'S ANSWER TO PLAINTIFFS' CLASS ACTION COMPLAINT
CASE NO.  2:15-CV-01848 AB (MANX)