BARNOW AND ASSOCIATES, P.C.
BEN BARNOW (*pro hac vice*)
ERICH P. SCHORK (*pro hac vice*)
1 North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: 312/621-2000
Fax: 312/641-5504
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619/338-1100
Fax: 619/338-1101
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

Class Counsel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA RAFOFSKY and JOSHUA IRON WING, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>   v.<br><br>NISSAN NORTH AMERICA, INC., a California corporation,<br><br>    Defendant. | Case No. 2:15-cv-01848 AB(MANx)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>DATE:   Sept. 11, 2017<br>TIME:   10:00 a.m.<br>JUDGE:  Hon. André Birotte Jr.<br>Courtroom: 7B, 7th Fl. – 1st Street<br><br>JURY TRIAL DEMANDED<br><br>Complaint Filed: March 12, 2015 |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. HISTORY OF THE LITIGATION .................................................................. 2

  A. The Litigation ................................................................................................ 2

  B. Settlement Negotiations ............................................................................... 6

III. THE SETTLEMENT ....................................................................................... 6

  A. The Class Definition .................................................................................... 6

  B. Settlement Benefits ....................................................................................... 7

    1. Cash or Voucher Option ........................................................................... 7

    2. Notice and Claims Administration Costs ................................................ 7

    3. Attorneys' Fees, Costs, and Expenses, and Representative
       Plaintiff Awards ....................................................................................... 8

  C. The Court-Approved Notice Program Was Substantial and Effective ............. 8

IV. THE SETTLEMENT SHOULD BE APPROVED ...................................... 10

  A. CAFA Requirements Have Been Satisfied ................................................ 11

  B. Class Certification ...................................................................................... 11

  C. Rule 23(c) Notice Requirements Were Satisfied ...................................... 11

  D. The Settlement is Fair, Reasonable, and Adequate .................................. 12

    1. The Strength of Plaintiffs' Case and the Risk, Complexity,
       and Likely Duration of Further Litigation Favors Final Approval ............... 12

    2. The Benefits of the Settlement Are Significant ..................................... 14

    3. The Extent of Discovery and Stage of Proceedings .............................. 15

    4. The Views of Experienced Counsel ....................................................... 15

    5. The Settlement Is the Product of Good Faith, Informed,
       and Arm's Length Negotiations ............................................................. 16

    6. The Reaction of Class Members ............................................................ 16

V. OBJECTIONS TO THE SETTLEMENT SHOULD BE OVERRULED ......... 17

VI. CONCLUSION .............................................................................................. 19

# TABLE OF AUTHORITIES

<u>Cases</u>

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................ 13

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)................................................................... 10

*Browning v. Yahoo, Inc.*,
   No. C04-01463, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2017) .................. 17, 18

*Chambers v. Whirlpool Corp.*,
   No. CV11-1733, 2016 WL 5922456 (C.D. Cal. Oct. 11, 2016)....................*passim*

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268, 1276 (9th Cir. 1992) ....................................................... 10

*EEOC v Hiram Walker & Sons, Inc.*,
   768 F2d 884 (7th Cir. 1985)................................................................... 17

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ............................................................................ 11

*Eisen v. Porsche Cars of N.A., Inc.*,
   No. 2:11-cv-09405-CAS (FFMx)
   2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ........................................... 18

*Grant v. Capital Mgmt. Servs., L.P.*,
   No. 10-CV-WQH BGS, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014).................. 12

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................... 18

*L. Zingerman D.D.S, P.C. v. Nissan N. Am., Inc.*,
   No. 14 C 7835, 2015 WL 1840952 (N.D. Ill. Apr. 20, 2015) ........................ 3

*In re Mego Fin. Corp. Secs. Litig.*,
   213 F.3d 454 (9th Cir. 2000).................................................................. 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...................................................... 13, 15, 16

*Peters v. Nat'l R.R. Passenger Corp.*,
   966 F.2d 1483 (D.C. Cir. 1992) ............................................................. 11

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010) ........................................................... 11

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009).................................................................. 16

ii                    Case No. 2:15-cv-01848 AB(MANx)

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................... 10

<u>Statutes, Rules, and Other Authorities</u>

28 U.S.C. § 1715 ............................................................................................ 10

Fed. R. Civ. P. 23 ..................................................................................... 10, 11

4 Herbert B. Newberg & Alba Conte,
   Newberg on Class Actions § 11:41 (4th ed. 2002) ............................... 10

Federal Judicial Center, *Judges' Class Action Notice
   and Claims Process Checklist and Plain Language Guide* (2010) ..................... 12

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Class Representatives Joshua Rafofsky, Joshua Iron Wing, and L. Zingerman D.D.S., P.C. (collectively, "Plaintiffs"), individually and on behalf of the Settlement Class (as defined in the Settlement Agreement),[1] by and through Class Counsel, hereby move pursuant to Rule 23 of the Federal Rules of Civil Procedure for entry of an Order finding the Settlement Agreement ("the Settlement") to be fair, reasonable, and adequate, and granting final approval of the Settlement.

## I.   INTRODUCTION

After years of hard-fought litigation, including substantial motion practice and voluminous and contested discovery, the Settlement was reached to resolve this litigation relating to allegations that the InTouch infotainment system in 2014 Infiniti Q50 vehicles was unable to perform as warranted and represented.

The Settlement represents an excellent result for the Settlement Class. Under the Settlement, purchasers and lessees of a new 2014 Infiniti Q50 vehicle can claim a cash payment or a voucher. Settlement Class Members claiming the cash option will receive $30 and, if they downloaded the Infiniti InTouch App prior to April 17, 2017, and attest to that on their claim form, they will receive an additional $55, for a total of $85. Each voucher will be worth $500 towards the lease or $750 towards the purchase of a new Infiniti vehicle unless, as of April 30, 2017, a Settlement Class Member had 3 or more warranty service visits (not including visits for routine maintenance or campaigns, such as software upgrades) in which case the voucher will be worth $750 towards the lease or $1,250 towards the purchase of a new Infiniti vehicle. Each voucher will be valid until March 31, 2019, and may be used by the Settlement Class Member or a family member of the Settlement Class Member who resides at the same address as the Settlement Class Member.

---

[1] The definitions contained in the Settlement Agreement are incorporated herein by reference.

On May 1, 2017, after briefing, a hearing, and due consideration, the Court granted preliminary approval of the Settlement. Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Certifying Settlement Class, Directing Notice to the Class, and Scheduling Fairness Hearing, ECF No. 126 ("Preliminary Approval Order").

The Court-approved Notice Program has been highly effective. Direct notice of the Settlement via a postcard with a tear-off claim form was successfully mailed to more than 98% of Settlement Class Members identified by Nissan, a Settlement website and toll-free number were established, and Nissan sent two emails notifying Settlement Class Members of their eligibility to receive the benefits of the Settlement and directing them to the Settlement website. The reaction to the Settlement has been overwhelmingly positive—of the over 45,000 Settlement Class Members identified, there were only 3 opt-outs and 3 objections.

Respectfully, the Settlement is fair, reasonable, and adequate, and should be granted final approval.

## II.   HISTORY OF THE LITIGATION

The Settlement was reached with the assistance of Judge Holderman (Ret.) after years of contested litigation in two district courts, significant investigation and analysis, extensive and contested discovery, and substantial motion practice. The Declaration of Ben Barnow ("Barnow Decl."), attached as Exhibit A to Plaintiffs' Motion For Award of Attorneys' Fees, Costs, and Expenses, and Plaintiff Service Awards (ECF No. 130-1), details the history of the Litigation and is incorporated herein by reference.

### A. The Litigation

The Litigation concerns Nissan's representations, through advertisements and various other media, that its 2014 Infiniti Q50 ("Q50") automobiles were equipped with an InTouch telematics system ("InTouch System") through which a user could

access, view, and use certain popular mobile phone apps, such as Pandora, Facebook, iHeartRadio, and Google Search, access and have emails read aloud, and access a calendaring feature (collectively, the "Promised Apps") when, in fact, the InTouch Systems in Q50s were incapable of accessing any of the Promised Apps until over a year after Q50s were first sold in the United States and still cannot access the Pandora and iHeartRadio apps. *See* Barnow Decl. ¶ 10.

This Action and the Related Action, *L. Zingerman, D.D.S., P.C. v. Nissan North America, Inc.*, No. 14-cv-07835 (N.D. Ill.) (together, the "Litigation"), were both filed as class actions against Nissan North America, Inc. *See* Class Action Complaint, ECF No. 1; Class Action Complaint (IECF No. 1).[2]

On October 7, 2014, Class Representative L. Zingerman D.D.S., P.C., filed the Related Action in the United States District Court for the Northern District of Illinois. Barnow Decl. ¶ 12. Zingerman's Class Action Complaint alleged that Nissan advertisements and representations regarding the Promised Apps violated the Magnuson-Moss Warranty Act, violated the Illinois Consumer Fraud Act, and constituted a breach of express warranty. Barnow Decl. ¶ 12. Nissan responded to Zingerman's complaint with a motion to dismiss. Barnow Decl. ¶ 13. After briefing and due consideration, the Honorable Virginia M. Kendall upheld Zingerman's claims in substantial part, dismissing only Zingerman's Magnuson-Moss Warranty Act claim to the extent that it relied on Nissan's New Vehicle Limited Warranty as a basis for liability. *See L. Zingerman D.D.S, P.C. v. Nissan N. Am., Inc.*, No. 14 C 7835, 2015 WL 1840952 (N.D. Ill. Apr. 20, 2015).

On March 12, 2015, Joshua Rafofsky and Joshua Iron Wing (together, "California Plaintiffs") filed their Class Action Complaint in this Action, alleging

---

[2] "IECF" refers to docket entries in the Related Case, *L. Zingerman, D.D.S., P.C. v. Nissan North America, Inc.*, No. 14-cv-07835 (N.D. Ill.).

1   claims against Nissan under the Magnuson-Moss Warranty Act, the California Legal
2   Remedies Act, California's Unfair Competition Law, Nevada's Deceptive Trade
3   Practices Act, and for breach of contract and express warranty. Barnow Decl. ¶ 16.
4   Nissan responded with a motion to dismiss California Plaintiffs' Magnuson-Moss
5   Warranty Act Claim. Barnow Decl. ¶ 17. On September 22, 2015, California
6   Plaintiffs voluntarily dismissed their Magnuson-Moss Warranty Act claim. Barnow
7   Decl. ¶ 17. Nissan's Answer was filed on October 6, 2015. Barnow Decl. ¶ 17.

8       Discovery in the Litigation was complex, voluminous and, at times, contested.
9   The discovery process involved the Parties' exchange of substantial written
10  discovery, Plaintiffs' counsel's review of in excess of 60,000 pages of documents
11  produced by Nissan, and sixteen (16) depositions—twelve (12) of which were taken
12  by Plaintiffs' counsel. Barnow Decl. ¶¶ 18–29. Nissan's and Plaintiffs' responses
13  and objections to written discovery were discussed during multiple meet-and-confer
14  conferences between counsel for the Parties. Barnow Decl. ¶ 20. Where an
15  agreement could not be reached, motions to compel were filed. Barnow Decl. ¶¶ 22–
16  25. Specifically, Plaintiffs filed three motions to compel—two of which were
17  granted in part—and Nissan filed a single motion to compel, which was denied.
18  Barnow Decl. ¶¶ 22–25.

19      The issue of class certification was hotly contested in the Action and the
20  Related Action. On October 13, 2016, Zingerman moved for class certification in
21  the Related Action seeking certification of a four-state (Illinois, Florida, New Jersey,
22  and New York) consumer fraud class and certification of an Illinois breach of
23  warranty class. Barnow Decl. ¶ 30. Zingerman's motion was supported by the expert
24  declaration of Bobby J. Calder, Ph.D., a marketing expert, and Stefan Boedeker, an
25  expert statistician and economist. Barnow Decl. ¶ 30. Nissan's opposition to
26  Zingerman's motion for class certification was filed on November 11, 2016, and
27  supported by a joint declaration from Nissan's disclosed expert economists, David

28

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT

W. Harless, Ph.D. and George E. Hoffer, Ph.D. Barnow Decl. ¶ 30. Zingerman's reply brief in support of its motion for class certification was filed on November 30, 2016. Barnow Decl. ¶ 30.

On December 7, 2016, California Plaintiffs filed their motion for class certification seeking certification of a California Class and a Nevada Class. Barnow Decl. ¶ 31. Plaintiffs' marketing expert, Dr. Bobby J. Calder, Ph.D., submitted a declaration in support of California Plaintiffs' motion. Barnow Decl. ¶ 31. On January 5, 2017, Nissan filed its opposition to California Plaintiffs' motion for class certification, which it supported with declarations of its disclosed experts, David W. Harless, Ph.D. and George E. Hoffer, Ph.D. Barnow Decl. ¶ 31. California Plaintiffs' reply brief in support of their motion for class certification was filed on January 23, 2017, and the Court held a hearing on February 2, 2017. Barnow Decl. ¶ 31.

While both motions for class certification were pending, Nissan moved for partial summary judgment in this Action, seeking summary judgment on California Plaintiffs' breach of contract and Nevada Deceptive Trade Practices Act claims. Barnow Decl. ¶ 32. The motion also sought summary judgment on all breach of warranty, California Legal Remedies Act ("CLRA"), and California Unfair Competition Law ("UCL") claims asserted on behalf of the putative classes, all claims concerning Facebook, Google Search, Email, and Calendar app functions, any claim under the CLRA by non-human persons or persons who use their Q50's primarily for business purposes, any plea for damages under the CLRA, and any plea for injunctive of declaratory relief under any cause of action. Barnow Decl. ¶ 32. California Plaintiffs' opposition to Nissan's motion was filed on February 7, 2017, and Nissan's reply brief was filed on February 14, 2017. Barnow Decl. ¶ 32.

On February 17, 2017, the Court denied California Plaintiffs' motion for class certification. Barnow Decl. ¶ 31. Four days later, the Parties reached agreement on

the material terms of the Settlement after a full day of mediation before Judge Holderman (Ret.). Barnow Decl. ¶ 36.

## B. Settlement Negotiations

The Parties discussed potential resolution on several occasions during the Litigation. Barnow Decl. ¶¶ 33–37. Prior to February 2017, the Parties discussed potential resolution with the assistance of Magistrate Judge Young B. Kim, participated in a March 2016 mediation before Judge Holderman (Ret.), and counsel for the Parties informally discussed the possibility of settlement on several other occasions. Barnow Decl. ¶¶ 34–35, 37. None of these efforts resulted in an agreement between the Parties. On February 21, 2017, the Parties finally reached agreement on the material terms of the Settlement with the assistance of Judge Holderman (Ret.). Barnow Decl. ¶ 36.

## III.   THE SETTLEMENT

### A. The Class Definition

In the Preliminary Approval Order, the Court certified the following class for settlement purposes only:

> All purchasers or lessees of a new 2014 Infiniti Q50, for end use and not for resale, from an Infiniti dealer in the fifty United States, the District of Columbia, Puerto Rico, U.S. Virgin Islands, Guam, and or any protectorate of the United States.

*Id.* at 2. The Settlement Class excludes (i) any people or businesses that did not purchase or lease the Class Vehicles for end use; (ii) Nissan and its officers, directors, attorneys, agents, affiliates, subsidiaries, authorized distributors and dealers; (iii) all Settlement Class members that timely and validly request exclusion from the Settlement Class; and (iv) the Judge presiding over the Litigation. *Id.*

## B. Settlement Benefits

### 1. Cash or Voucher Option

The Settlement provides Settlement Class Members with the option of claiming a cash payment or a voucher usable towards the purchase or lease of a new Infiniti vehicle. Barnow Decl. ¶¶ 43–45. Settlement Class Members claiming the cash option will receive a check for $30, and those who downloaded the Infiniti InTouch App prior to April 17, 2017, and attested to that on their claim form will receive an additional $55, for a total of $85. Barnow Decl. ¶ 44. Settlement Class Members claiming the voucher option will receive a voucher good for $500 towards the lease or $750 towards the purchase of a new Infiniti vehicle unless, as of April 30, 3017, the Settlement Class Member had three or more warranty service visits (not including visits for routine maintenance or campaigns, such as software upgrades), in which case the voucher will be worth $750 towards the lease or $1,250 towards the purchase of a new Infiniti vehicle. Barnow Decl. ¶ 45. The vouchers are good until March 31, 2019, and may be used by the Settlement Class Member or a family member of the Settlement Class Member who resides at the same address as the Settlement Class Member.

### 2. Notice and Claims Administration Costs

Under the Settlement, Nissan is obligated to pay all costs of Notice and Settlement Administration. SA § 3.01(c). In accordance with the Court-approved Notice Program, direct mail was mailed via postcard notice to over 45,000 Settlement Class Members and a Settlement website and dedicated toll-free number was established. *See* Declaration of Lana Lucchesi Re: Notice Procedures, filed herewith. The postcard notice included a tear-off claim form with prepaid postage to make it as easy as possible for Settlement Class Members to submit claims. Pursuant to the Settlement, Nissan also sent two follow-up emails notifying

Settlement Class Members of their eligibility to receive a cash payment or voucher and directing Settlement Class Members to the Settlement website.

### 3. Attorneys' Fees, Costs, and Expenses, and Representative Plaintiff Awards

Pursuant to the Settlement, Nissan agreed to pay Class Counsel, subject to Court approval, attorneys' fees not to exceed $710,000, and costs and expenses not to exceed $90,000. SA § 3.01(g). Nissan also agreed to pay, subject to Court approval, a service award to each Class Representative in the amount of $5,000. SA § 3.01(g).

The settling Parties did not discuss attorneys' fees, costs, and expenses, or service awards until after the substantive elements of the Settlement were agreed to. SA § 3.04. The amounts of any award of attorneys' fees, costs, and expenses, and service awards are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. SA § 4.09(c).

Pursuant to the Preliminary Approval Order and in accordance with Fed. R. Civ. P. 23(h), Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses, and Plaintiff Service Awards was filed on July 31, 2017, and posted on the Settlement website on August 1, 2017. Lucchesi Decl. ¶ 14.

### C. The Court-Approved Notice Program Was Substantial and Effective

The Court-approved Notice Program was extremely effective. The Notice Plan was implemented by Kurtzman Carson Consultants LLC ("KCC"), an experienced class action notice provider. As summarized herein and explained in the concurrently filed Lucchesi Declaration, Notice was provided in accordance with the Court-approved Notice Plan. Lucchesi Decl. ¶¶ 6–9.

On May 18, 2017, Nissan provided KCC with a list of 45,748 persons identified as Settlement Class Members. Lucchesi Decl. ¶ 6. After running these

addresses through the National Change of Address database ("NCOA") maintained by the U.S. Postal Service, which resulted in updating 1,032 addresses, KCC mailed Postcard Notice (including a tear-off claim form) directly to each Settlement Class Member. *Id.* ¶¶ 7–8. As of August 18, 2017, KCC had received a total of 401 Postcard Notices returned with forwarding addresses and 1,713 returned without forwarding addresses. *Id.* ¶ 9. Additional research allowed KCC to update 1,165 of these addresses, and KCC promptly re-mailed Postcard Notices to the updated addresses. *Id.* Postcard notice was successfully mailed to over 98% of Settlement Class Members identified by Nissan. *Id.* ¶ 10.

On or before June 1, 2017, a Settlement website was established at www.2014Q50ClassActionSettlement.com. *Id.* ¶ 11. The Settlement website allowed persons to view information regarding the Settlement, including copies of the Long Form Notice, Settlement Agreement, Preliminary Approval Order, and answers to frequently asked questions. Settlement Class Members were also able to print a copy of the claim form or submit the claim form electronically through the website. *Id.* Settlement Class Members could view Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses, and Plaintiff Service Awards after it was uploaded to the Settlement website on August 1, 2017. *Id.* The Settlement website also included important dates and deadlines relating to the Settlement, and a toll-free number for individuals to call with questions regarding the Settlement or the Litigation. As of August 18, 2017, the website had received 5,860 visits. *Id.*

On or before June 1, 2017, a toll-free number was established. *Id.* ¶ 10. KCC established an Interactive Voice Response ("IVR") system to provide information about the Settlement and to record requests for Notice packets. As of August 18, 2017, there had been 830 calls to the toll-free number. *Id.* ¶ 10.

Pursuant to the Settlement, Nissan also sent two follow-up emails notifying Settlement Class Members of their eligibility to receive a cash payment or voucher and directing Settlement Class Members to the Settlement website.

The Notice Program reached as many Settlement Class Member as reasonably possible and provided the Settlement Class with the best notice practicable under the circumstances.

## IV.   THE SETTLEMENT SHOULD BE APPROVED

Class action settlements may be approved only after a hearing and a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). As a matter of express public policy, federal courts favor and encourage settlements, particularly in class actions, where the costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (same); *see also* 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg") § 11:41 (4th ed. 2002) (collecting cases).

At the final approval stage for a class action settlement, a court must confirm that the notice requirement of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(d) and Fed. R. Civ. P. 23(c)(2)(B) have been satisfied, and after a hearing, determine whether the settlement is fair, reasonable, and adequate. *Chambers v. Whirlpool Corp.*, No. CV11-1733, 2016 WL 5922456, at *3–4 (C.D. Cal. Oct. 11, 2016). In determining whether a settlement is fair, reasonable, and adequate, courts look to some or all of the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Id.* (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). In cases such as this, where the settlement was reached prior to certification of a litigated class, a court must also confirm that the settlement was not the product of collusion between the parties. *See id.*

### A. CAFA Requirements Have Been Satisfied

Pursuant to CAFA and Rule 23, notice of the Settlement was mailed to the proper governmental authorities on April 28, 2017. Lucchesi Decl. ¶ 4. No government authority has contacted to the Parties to discuss or to object to any provision of the Settlement. *Id.* ¶ 5. CAFA's requirements have been satisfied.

### B. Class Certification

The Court's prior certification of the Settlement Class for settlement purposes only addressed the relevant provisions of Fed. R. Civ. P. 23(a) and (b)(3). Nothing has changed from then until now to require a different conclusion, and its reasoning applies with equal force today. For the reasons stated in the Preliminary Approval Order, the Court's certification of the Class for settlement purposes only should be affirmed.

### C. Rule 23(c) Notice Requirements Were Satisfied

For classes certified under Fed. R. Civ. P. 23(b)(3), "the Court must direct to class members the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2). Notice serves to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974)). "[D]ue process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice." *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010).

As detailed above, Notice was provided in accordance with the Court-approved Notice Program. Postcard notice was successfully mailed to more than 98 percent of Settlement Class Members as identified by Nissan, a Settlement website and toll-free number were established, and Nissan sent two emails alerting Settlement Class Members of their eligibility to receive the benefits of the Settlement and directing them to the Settlement website. The Notice readily satisfies the "best practicable" standard and due process requirements. *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010) (recognizing 70% reach to be reasonable).

### D. The Settlement is Fair, Reasonable, and Adequate

The substantial and immediate relief made available to Settlement Class Members under the Settlement is outstanding, especially when weighed against the significant risks and delay that would be involved in litigating this matter to a final judgment and exhaustion of all appeals. Additionally, the Settlement was reached by experienced class action attorneys after years of hard-fought litigation, including voluminous discovery and substantial motion practice, through mediation before the Honorable James Holderman (Ret.). Settlement Class Members' reaction to the Settlement has also been overwhelmingly positive. All of the relevant factors weigh in favor of final approval of the Settlement.

#### 1. The Strength of Plaintiffs' Case and the Risk, Complexity, and Likely Duration of Further Litigation Favors Final Approval

Balancing the risks of continued litigation, against the immediacy and certainty of the significant recovery provided for by the Settlement, supports approval of the Settlement. When reviewing a class action settlement agreement:

> The court shall consider the vagaries of the litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush.

*Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-WQH BGS, 2014 WL 888665, at *3 (S.D. Cal. Mar. 5, 2014) (citations and quotations omitted).

Plaintiffs and Class Counsel believe the claims asserted in the litigation have merit. They would not have fought so hard to advance their claims if it were otherwise. But they also recognize the substantial risks involved in continuing this litigation. Nissan has aggressively defended its position regarding class certification and liability, and has the resources and willingness to remain steadfast in its position until it exhausts all available avenues and procedures.

Class Counsel are mindful of the inherent burdens of proof and Nissan's defenses. And they also recognize the difficulties in establishing liability on a class-wide basis throughout the case, or in achieving a result better than that provided by the Settlement here. As the Court is aware, Plaintiffs' Motion for Class Certification in the instant action was denied on February 17, 2017. ECF No. 112. The motion for class certification in the Related Action and Nissan's motion for partial summary judgment in this case were fully briefed and pending decisions at the time the Parties achieved a resolution.

Prosecuting this litigation through trial and appeal would likely be lengthy, complex, and costly to all parties. *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (recognizing that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them"). Continued proceedings necessary to litigate this matter to final judgment would likely include pretrial motions, a trial, post-trial motion practice, judgment, and potential appeals.

The Settlement, in contrast, delivers a real, timely, and substantial remedy to Settlement Class Members that fairly, reasonably, and adequately addresses the situation confronting Settlement Class Members without the risks and delay inherent in further litigation. This factor favors final approval of the Settlement. *See*

*Whirlpool*, 2016 WL 5922456, at *6 (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)) (finding it "significant that Class Members [would] receive 'immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.'").

### 2.   The Benefits of the Settlement Are Significant

"The very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Whirlpool*, 2016 WL 5922456, at *6. The Settlement is an excellent result for the Settlement Class, especially considering the risks, delay, and expense of further litigation.

Under the Settlement, Settlement Class Members have the option of receiving a cash benefit or a voucher. They need only complete and timely submit via mail or online, a simple, straightforward claim form to receive either benefit. Settlement Class Members that select the cash option will receive a check for $30 and, if they affirm on their claim form that they downloaded the Infiniti InTouch App prior to April 17, 2017, they will receive an additional $55 (for a total of $85). Barnow Decl. ¶ 44. Settlement Class Members claiming the voucher option will receive a voucher good for $500 towards the lease or $750 towards the purchase of a new Infiniti vehicle unless, as of April 30, 3017, the Settlement Class Member had three or more warranty service visits (not including visits for routine maintenance or campaigns, such as software upgrades), in which case the voucher will be worth $750 towards the lease or $1250 towards the purchase of a new Infiniti vehicle. Barnow Decl. ¶ 45. Under the Settlement, Nissan will pay all costs of notice and administration. Nissan will also pay all attorneys' fees, costs, and expenses, and service awards to each of the Representative Plaintiffs, as approved by the Court.

The Settlement represents an excellent result for the Settlement Class. This factor supports final approval.

### 3.  The Extent of Discovery and Stage of Proceedings

"A settlement following sufficient discovery and genuine arm's length negotiation is presumed fair." *Whirlpool*, 2016 WL 5922456, at *6 (quoting *Nat'l Rural Telecommc'ns Coop.*, 221 F.R.D. at 528).

The Settlement was negotiated and agreed to by experienced Class Counsel knowledgeable of the Parties' respective positions and the pertinent legal and factual issues in the litigation. Prior to reaching the Settlement, Class Counsel and attorneys from their firms reviewed more than 60,000 pages of documents, deposed 10 current or former employees of Nissan, and deposed 2 individuals identified as experts by Nissan. Barnow Decl. ¶¶ 18–21, 26–29. They researched and filed multiple complaints, briefed motions to dismiss, motions to compel, motions for class certification, and motions for partial summary judgment, and coordinated with two experts retained on behalf of Plaintiffs. Barnow Decl. ¶¶ 12–17, 30–32. They also participated in multiple attempts to resolve the Litigation, including through the assistance of Magistrate Judge Young B. Kim and an initial mediation before Judge Holderman (Ret.), prior to ultimately reaching agreement on the Settlement via mediation before Judge Holderman (Ret.) in February 2017. Barnow Decl. ¶¶ 33–37. Because Class Counsel had more than sufficient information to measure the terms of the Settlement against the risks of continuing litigation, this factor supports final approval.  *See*, *e.g.*, *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (holding "significant investigation, discovery and research" supported "district court's conclusion that the Plaintiffs had sufficient information to make an informed decision about the Settlement").

### 4.  The Views of Experienced Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation . . . because parties represented by competent counsel are better positioned than courts to produce a

settlement that fairly reflects each party's expected outcome in the litigation." *Nat'l Rural Telecommc'ns Coop.*, 221 F.R.D. at 528; *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).

Class Counsel collectively have decades of experience leading the prosecution of complex class action matters and fully endorse the Settlement as exceeding the required standard of fair, reasonable, and adequate. This factor weighs in favor of final approval.

### 5. The Settlement Is the Product of Good Faith, Informed, and Arm's Length Negotiations

The Settlement was reached as a result of contested, arm's length negotiations assisted by an experienced mediator, Judge Holderman (Ret.), formerly the Chief Judge for the United States District Court for the Northern District of Illinois. Prior to agreeing to the Settlement, the Parties engaged in years of hard-fought litigation and extensive discovery. They also participated in multiple unsuccessful attempts to resolve the Litigation, including discussing potential resolution with the assistance of Magistrate Judge Young B. Kim, participating in an unsuccessful March 2016 mediation before Judge Holderman (Ret.), and informally discussing the possibility of settlement on several other occasions. Barnow Decl. ¶¶ 34–35, 37. The Parties finally reached agreement on the material terms of the Settlement at a meditation before Judge Holderman (Ret.) on February 21, 2017. Barnow Decl. ¶ 36. This factor supports final approval of the Settlement.

### 6. The Reaction of Class Members

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement [] are favorable to the class members." *Nat'l Rural Telecommc'ns Coop.*, 221 F.R.D. at 529.

Settlement Class Members' reaction to the Settlement has been overwhelmingly positive. As noted above, Postcard Notice was mailed to over 45,000 Settlement Class Members and a Settlement website and toll-free number were established. After that expansive notice effort, only 3 opt-outs and 3 *pro se* objections were received. The miniscule number of opt-outs and objections demonstrate that the Settlement has been overwhelmingly received as an excellent one.

Each of the relevant factors supports that the Settlement is fair, reasonable, and adequate, and should be granted final approval.

## V.   OBJECTIONS TO THE SETTLEMENT SHOULD BE OVERRULED

After the extensive and successful Notice Program, only three *pro se* objections to the Settlement have been received. The objections are attached as exhibits A, B, and C, to the Declaration of Erich P. Schork, filed herewith. The objections are without merit and should be overruled.

As detailed above, the Settlement was reached after years of hard-fought litigation, voluminous discovery, and constitutes an excellent result for the Settlement Class, especially considering the risk and delay that would be encountered in continuing to litigate this matter to judgment. Despite the excellent benefits, the Levitt and McMahon objections argue the Settlement should provide more or different benefits. While Levitt does not suggest an adequate value, McMahon requests termination of the lease on her current vehicle without penalty and a $3,500 credit on a new Nissan or Infiniti vehicle of her choosing.

The objections fail to recognize that "settlement, as a product of compromise, typically offers less than a full recovery." *Browning v. Yahoo, Inc.*, No. C04-01463, 2007 WL 4105971, at *5 (N.D. Cal. Nov. 16, 2017) (citing *EEOC v Hiram Walker & Sons, Inc.*, 768 F2d 884, 889 (7th Cir. 1985)). The objections also fail to recognize the significant risks of continuing to litigate this matter and the possibility that even

if a successful verdict were obtained after years of litigation, the possibility exists that they would receive less via a judgment than made available to them under the Settlement. The objections boil down to "complaining that the settlement should be 'better,' which is not a valid objection." *Browning*, 2007 WL 4105971, at *5 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). Additionally, Settlement Class Members' right to opt-out of the Settlement was sufficient to protect the interests of Class Members who believe they are entitled to more or different benefits. *See, e.g., Eisen v. Porsche Cars of N.A., Inc.*, No. 2:11-cv-09405-CAS (FFMx), 2014 WL 439006, *8 (C.D. Cal. Jan. 30, 2014) ("Federal courts routinely hold that the opt-out remedy is sufficient to protect class members who are unhappy with the negotiated class action settlement terms."). These objections are without merit and should be overruled.

The Graham Objection complains that they should be able to apply the voucher benefit to their Infiniti vehicle leased prior to June 1, 2017. The Grahams were eligible for the same excellent benefits as the other Settlement Class Members—that is, the cash option or a voucher to be used towards the purchase or lease of a new Infiniti vehicle. Although not required to do so under the Settlement, Nissan made the decision to honor vouchers towards the purchase or lease of new Infiniti vehicles occurring prior to entry of an order granting final approval of the Settlement. The voucher benefit may be applied to the purchase or lease of a new Infiniti vehicle occurring from June 1, 2017 to March 31, 2019, and was structured to be used when purchasing or leasing a new Infiniti vehicle. Given that postcard notice was first mailed to Settlement Class Members on June 1, 2017, it is reasonable and appropriate for vouchers to apply only to purchases or leases of new Infiniti vehicles occurring on that date or thereafter. The Graham Objection is without merit and should be overruled.

1    **VI.    CONCLUSION**

2          For the reasons set forth above, Plaintiffs' motion for final approval of class

3    action settlement should be granted.

4

5    Dated:       August 21, 2017           Respectfully submitted,

6
                                            BARNOW AND ASSOCIATES, P.C.
7                                           BEN BARNOW (*pro hac vice*)
                                            ERICH P. SCHORK (*pro hac vice*)
8

9                                           By:_____/s  Ben Barnow_____
                                                      BEN BARNOW
10

11                                          BARNOW AND ASSOCIATES, P.C.
                                            One North LaSalle Street, Suite 4600
12                                          Chicago, Illinois 60602
                                            Tel: 312/621-2000
13                                          Fax: 312/641-5504
                                            b.barnow@barnowlaw.com
14                                          e.schork@barnowlaw.com

15                                          BLOOD HURST & O'REARDON, LLP
                                            TIMOTHY G. BLOOD (149343)
16                                          THOMAS J. O'REARDON II (247952)
                                            PAULA R. BROWN (254142)
17                                          701 B Street, Suite 1700
                                            San Diego, CA 92101
18                                          Tel: 619/338-1100
                                            Fax: 619/338-1101
19                                          tblood@bholaw.com
                                            toreardon@bholaw.com
20                                          pbrown@bholaw.com

21                                          *Class Counsel*

22

23

24

25

26

27

28
                                    19          Case No. 2:15-cv-01848 AB(MANx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and that I shall cause the foregoing document to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

/s  Ben Barnow_____

BEN BARNOW
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, Illinois 60602
(312) 621-2000
(312) 641-5504 (fax)
b.barnow@barnowlaw.com

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT